# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 3, 2013

No. 12-50044

Lyle W. Cayce
Clerk

JOSE DAVILA and
MARCELA C. DUARTE,

                                       Plaintiffs-Appellants

v.

UNITED STATES OF AMERICA, UNKNOWN
AGENTS OF UNITED STATES CUSTOMS AND
BORDER PROTECTION; IFTIKHAR KHAN;
BLAKE TRESTER; PHIL BASAK; BRIAN L. SIKES;
MARK SPIER; UNKNOWN RANGERS OF THE
UNITED STATES NATIONAL PARK SERVICE; and
UNKNOWN BREWSTER COUNTY SHERIFF
DEPUTIES,

                                       Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

DENNIS, Circuit Judge:

Plaintiffs Jose Davila ("Davila") and Marcela Duarte ("Duarte") appeal the district court's dismissal with prejudice of their claims brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 ("FTCA"), *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)*,* and 42 U.S.C. § 1983. The plaintiffs claim that in two incidents—arising out of a

January 7, 2009 checkpoint search and an April 9, 2009 felony traffic stop— U.S. Border Patrol agents, National Park Service rangers, and Brewster County sheriff deputies violated their Fourth and Fourteenth Amendment rights against illegal search and seizure, excessive use of force, and illegal arrest; falsely imprisoned them; assaulted them; intentionally inflicted emotional distress on them; and acted negligently in issuing a Be-On-The-Lookout ("BOLO") Alert for Davila's vehicle. The plaintiffs sued the United States; unknown agents of U.S. Customs and Border Protection ("Unknown CBP Agents"); Unknown Brewster County Sheriff Deputies; and five named National Park Service ("NPS") Rangers, Iftikhar Khan, Blake Trester, Phil Basak, Brian Sikes, and Mark Spier ("Named NPS Rangers"), and Unknown NPS Rangers (collectively, "NPS Rangers"). The district court dismissed all the claims with prejudice. We REVERSE the dismissal of Davila's FTCA claim of false imprisonment arising out of his arrest and detention following the search of his car at a checkpoint on January 7, 2009, and AFFIRM the district court's dismissal of the remaining claims.

## BACKGROUND

### A.

Davila's suit arises out of checkpoint and traffic stop incidents that occurred in Brewster County, Texas. Duarte's suit arises only from the latter incident. The first incident ("the checkpoint incident") occurred on January 7, 2009, at the U.S. Border Patrol checkpoint near Marathon, Texas. Jose Davila, his son, Tocho Davila-Luna ("Tocho"), and Davila-Luna's girlfriend, Yesenia Mata ("Mata") were traveling in a truck from Mexico into the United States. They stopped at the checkpoint. A U.S. Customs and Border Protection ("CBP" or "Border Patrol") agent determined that they were all U.S. citizens, and referred the truck for further inspection. The search revealed no contraband; the agents found only a pair of boots, a chicken, and a cooler. The Border Patrol

agent decided to detain them until a K-9 unit could be brought in from a different checkpoint. Davila was told that they would have to wait twenty minutes, but the defendants later alleged that the other checkpoint was located fifty miles away. After two hours elapsed without the K-9 unit arriving, Tocho became impatient and left in the vehicle. Davila and Mata remained at the inspection site. A Brewster County sheriff deputy who was at the checkpoint pursued Tocho in a high-speed chase and fired his gun at Tocho's truck. Tocho stopped the truck and was subdued and arrested. While being placed into a holding cell at the checkpoint, Tocho kicked the door, which hit the agent's left hand.

While the pursuit was ongoing, Davila was detained at a cell at the checkpoint and questioned about his son. He asserts that the Unknown CBP Agents attempted to coerce him into making a false statement against his son. Davila and Mata then were handcuffed and taken to a county jail in Alpine, Texas. Davila was processed, given prison clothing, and placed in a cell. He remained in custody until the middle of the night, when he was released without explanation. No criminal complaint was ever filed against Davila. Tocho was released and later charged with one count of high-speed flight and two counts of assaulting, impeding, or resisting a federal officer. He failed to appear to answer the charges and a warrant was issued for his arrest. As of April 4, 2009, Tocho remained at large.

The second incident ("the Big Bend traffic stop") occurred on April 4, 2009, in Big Bend National Park, in Texas. Davila, accompanied by his minor grandson and Duarte, traveled in his vehicle, a red Kia, to the park, picked up a park pass without incident, and proceeded south through the park. Unbeknownst to Davila, a CBP Agent had issued a BOLO for Davila's car because it had once been associated with Tocho. Once inside the park, the Named NPS Rangers—Khan, Trestor, Basak, Sikes, and Spier—and the

No. 12-50044

Unknown NPS Rangers pulled Davila over and surrounded his car with several law enforcement vehicles.[1] The Named NPS Rangers got out of their vehicles and aimed their weapons at Davila, his grandson, and Duarte and kept their weapons trained on them for the duration of the traffic stop. Davila, Duarte, and Davila's minor grandson were ordered out of the car, handcuffed, and required to kneel on the ground. Duarte was left directly behind the exhaust pipe of a law enforcement vehicle that remained running, and she was not allowed to move for some period of time. While Davila, Duarte, and Davila's grandson remained handcuffed, the NPS Rangers searched the vehicle.

The NPS Rangers allege that they pulled Davila over in part to respond to the BOLO that had been issued on Davila's car. They allege that they were worried that Tocho, a fugitive, was concealed in the car and might have weapons. They searched the cabin of the car and forced open the trunk. They did not find Tocho or any weapons or contraband. At some point during or after this search, the NPS Rangers removed Davila, Duarte, and Davila's grandson's shoes and placed them into separate vehicles. The NPS Rangers did not run a check to verify their identities until thirty-eight minutes after the initial stop. The check took six minutes. After that, Davila, Duarte, and Davila's grandson remained for some time in the custody of the NPS Rangers until an unknown Border Patrol agent arrived and instructed the NPS Rangers to release them. Before they released Davila, he was required to take a breathalyzer test three times, which he passed. They informed Davila that his license was expired and

---

[1] Davila alleges that he had not violated any traffic rules when he was stopped. The Named NPS Rangers allege that when they received the BOLO, they decided that they would pull Davila over and execute a felony stop if Davila violated any traffic rules, and that they did, in fact, pull Davila over and searched his vehicle only after they witnessed him speeding and weaving in his lane. For the purposes of this appeal, Davila's allegations must be accepted as true and viewed in the light most favorable to the plaintiffs.

that Duarte would have to drive.[2] Davila, Duarte, and Davila's grandson were then allowed to leave.

## B.

The plaintiffs submitted separate administrative claims for relief to the Department of Homeland Security and to the Department of the Interior for damages arising out of the checkpoint incident and the Big Bend traffic stop. Both claims were denied. On October 5, 2010, the plaintiffs filed their original complaint in district court. The complaint raised ten causes of action. The first four counts pertained to the checkpoint incident. Davila claimed that the CBP Agents violated his Fourth Amendment right against illegal search and seizure (Count 1), and that the government was liable under the FTCA for false imprisonment and intentional infliction of emotional distress (Counts 2 and 3). Davila also claimed that Unknown Brewster County Sheriff Deputies violated his Fourth and Fourteenth Amendment rights against illegal arrest (Count 4). The remaining six claims pertained to the Big Bend traffic stop. Davila and Duarte brought suit against the Named NPS Rangers, Unknown Rangers, and the Unknown CBP Agent for violating their Fourth Amendment rights against illegal search and seizure (Count 5); and against the NPS Rangers and Unknown Rangers for violating their Fourth Amendment rights against use of excessive force (Count 6). The plaintiffs also brought four FTCA claims against the government arising out of the Big Bend traffic stop: assault (Count 7); intentional infliction of emotional distress (Count 8); false imprisonment (Count 9); and negligent breach of duty in failing to properly review relevant records before issuing a BOLO that would subject "innocent U.S. citizens to unreasonable search and seizure, detention, assault, and battery" (Count 10).

---

[2] The defendants also allege that they asked Duarte to drive because Davila, though he passed the breathalyzer test, had a small amount of alcohol in his system.

No. 12-50044

The NPS Rangers, the defendants named in Counts 5 and 6, moved for summary judgment on qualified immunity grounds. With regard to both the illegal search and seizure claim and the excessive force claim, the NPS Rangers asserted that the plaintiffs failed to show that their constitutional rights were violated, or that such rights were clearly established at the time of the traffic stop. The government filed a motion to dismiss counts 2, 3, and 10 for lack of subject-matter jurisdiction. The government also filed a motion to dismiss counts 7, 8, and 9 for failure to state a claim or, alternatively, for summary judgment on those counts. In a Memorandum Opinion and Order filed October 31, 2011, the district court granted these motions and dismissed Counts 5 and 6 on qualified immunity grounds; dismissed counts 2, 3, and 10 for lack of subject-matter jurisdiction; and dismissed counts 7, 8, and 9 for failure to state a claim upon which relief may be granted. The district court dismissed these claims with prejudice.  The Order also instructed the plaintiffs to show cause as to why the remaining Counts 1 and 4 should not be dismissed for failure to properly serve the defendants under Federal Rules of Civil Procedure 4(m). The plaintiffs informed the court they would not pursue Counts 1 and 4, and on November 14, 2011, the district court dismissed Counts 1 and 4 with prejudice and dismissed the case in its entirety. The plaintiffs now appeal.

## ANALYSIS

### A. Checkpoint Incident

Davila appeals the district court's dismissal of his claim against the government under the FTCA for false imprisonment, arising out of his interrogation and imprisonment by Unknown Border Patrol Agents on January 7, 2009 (Count 2).[3] The claim was dismissed on the grounds that the district

---

[3] In his complaint, Davila also alleged two Fourth Amendment violation claims arising from the same January 7, 2009 interrogation and arrest (Counts 1 and 4). He does not appeal the dismissal of those claims. Neither does Davila appeal the dismissal of his FTCA claim for

court lacked subject-matter jurisdiction. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.Twombly*, 550 U.S. 544, 570 (2007)). We review the district court's dismissal for lack of subject-matter jurisdiction over the plaintiffs' FTCA claim de novo. *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001). This Court "accept[s] all of the nonmovant's well-pleaded factual allegations as true, but [does] not rely upon conclusional allegations or legal conclusions that are disguised as factual allegations." *Id.*

The district court found that *Jeanmarie*, 242 F.3d 600, controls this issue and forecloses Davila's FTCA claim arising out of the checkpoint incident as barred under the FTCA detention-of-goods exception. Because the interrogation and imprisonment occurred after the detention of Davila's vehicle had ended, however, the detention-of-goods exception does not apply to Davila's false imprisonment claim, and the holding in *Jeanmarie* is inapplicable to the present case.

The FTCA waives the government's immunity from suit. The waiver is subject to several exceptions, including the detention-of-goods exception, which provides that the FTCA's waiver of sovereign immunity is inapplicable to "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c). We interpret this subsection broadly. *Capozzoli v. Tracey*, 663 F.2d 654, 658 (5th Cir. 1981). Under a separate subsection of the FTCA, Congress has also made the waiver of immunity inapplicable to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious

---

intentional infliction of emotional distress (count 3). Davila abandoned his appeal of these arguments by failing to raise them in the body of his brief. *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," but explicitly waives that immunity—thereby providing an exception to the exception—for "any claim arising out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution," where such claims result from "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h).

Davila urges this court to reverse the district court on the basis that his intentional tort claim of false imprisonment falls within this waiver of immunity, even where the detention-of-goods exception might otherwise apply. In *Jeanmarie*, we concluded that

> notwithstanding the fact that intentional tort claims arising out of arrests are not barred by § 2680(c), and are in fact permitted by § 2680(h), such claims *are barred* by the [detention-of-goods] exception if the alleged torts arose from the inspection, seizure, or detention of goods by a Customs agent because such claims involve conduct covered by § 2680(c).

*Jeanmarie*, 242 F.3d at 604 (citing *Gasho v. United States*, 39 F.3d 1420, 1433-34 (9th Cir. 1994)). Therefore, even intentional torts committed by law enforcement officers are exempt from FTCA suits when such torts were committed during circumstances that would warrant a detention-of-goods exception.

Davila's claim, however, should not have been dismissed as lacking subject-matter jurisdiction because it did not arise from the inspection, seizure, or detention of goods by the Border Patrol agents. In *Jeanmarie*, we determined that Jeanmarie's assault, battery, and false imprisonment occurred while his vehicle was being searched at a checkpoint, and therefore fell within the broad language of the exception. *Id.* at 605; *see also Capozzoli*, 663 F.2d at 658 (noting that the language of the exception "is broad enough to encompass any activities of an IRS agent even remotely related to his or her official duties"). Jeanmarie

No. 12-50044

was waiting in a designated area while customs officials checked his vehicle. When he went to search for a bathroom after being denied permission to do so, officers caught him, shoved him against a counter, injuring his stomach, and forcibly restrained him. We held that his claim was barred by the detention-of-goods exception because it occurred while the search was ongoing. *Jeanmarie*, 242 F.3d at 604. *Jeanmarie* did not reach the question of whether an intentional tort would fall under the detention-of-goods exception if it takes place after the search is concluded, noting that "an intentional-tort claim involving the infliction of emotional distress during an arrest *following* a search by a Customs agent [may] not fall within § 2680(c) because such a tort was incident . . . to the detention of a person after the search for and detention of goods was completed." *Id.* at 604 (citing *Rivera v. United States*, 907 F. Supp. 1027, 1030 (W.D. Tex. 1995)).

The intentional tort alleged by Davila occurred well after the search of his car by Border Patrol agents. Davila waited without incident while his car was searched at the primary inspection checkpoint and for two additional hours while the Border Patrol agents waited for a K-9 unit to be brought in from a different checkpoint for additional screening. He does not allege that the Border Patrol agents committed any intentional tort during this time. After the two hours lapsed, Tocho left in the vehicle, leaving Davila and Mata behind at the inspection site, and was pursued and caught by Brewster County officers. The intentional tort against Davila occurred only after Tocho had left the checkpoint in the vehicle. The false imprisonment claim arose out of the officers' arrest and detention of Davila in a county jail, located away from the checkpoint. No contraband had been found in the vehicle, the search had long since ended, and Tocho had been caught by the time that Davila was arrested and detained.

The detention-of-goods exception covers "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of

9

No. 12-50044

customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c). Davila does not contend that the claim arose in respect of the detention of his vehicle, and he does not bring suit with regard to the search of his vehicle or his treatment while at the checkpoint area. The intentional tort was allegedly committed after Tocho left in the vehicle and were unrelated to the vehicle or the detention thereof. For these reasons, the detention-of-goods exception does not apply to Davila's claim of false imprisonment as alleged in Count 2 of his complaint.

## B. Big Bend Traffic Stop

### 1. Fourth Amendment Violation Claims (Counts 5 and 6)

The district court granted summary judgment on the basis of qualified immunity to the NPS Rangers who were involved in the Big Bend traffic stop, and dismissed the plaintiffs' Fourth Amendment claims of illegal search and seizure (Count 5) and excessive use of force (Count 6). We review the district court's grant of qualified immunity de novo. *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008).

"Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bishop v. Arcuri*, 674 F.3d 456, 460 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once the NPS Rangers raised the qualified immunity defense, the plaintiffs bore the burden of showing that the facts alleged demonstrated that the officer violated a constitutional right, and that the right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts need not decide the two prongs of *Saucier* in sequential order). A right is clearly established if it "would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Kovacic v. Villarreal*,

628 F.3d 209, 213 (5th Cir. 2010) ("A constitutional right is clearly established for the purposes of section 1983 only if the law is clear enough such that 'a reasonable official would understand that what he is doing violates that right.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))).

### a. Illegal Search and Seizure Claim

The plaintiffs claim that the NPS Rangers violated their Fourth Amendment rights against illegal searches and seizures when the NPS Rangers pulled them over on a road in Big Bend National Park after receiving a BOLO for Davila's car, a red Kia. The NPS Rangers assert that the BOLO contained the correct license plate of Davila's car, and stated that the car was connected with Tocho Davila-Luna, a fugitive. The government did not produce a copy of the BOLO. Plaintiffs do not assert that the BOLO contained incorrect information about the car or license plate, or that Tocho was no longer a fugitive at the time of the stop. Rather, they contend that an agent issued the BOLO without first researching whether Tocho was still associated with the car, and assert that Tocho had not been associated with the car for several months. The plaintiffs also allege that the NPS Rangers were unjustified in both the scope and duration of the search of the car.

"[P]olice officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). "Under [*Terry v. Ohio*, 392 U.S. 1 (1968)], we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Rains*, 615 F.3d 589, 594 (5th Cir. 2010) (quoting *United States v. Stevens*, 487 F.3d 232, 244 (5th Cir. 2007)). The police officer must have reasonable suspicion to justify the investigative stop, which requires "the police

officer . . . to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009) (quoting *Terry*, 392 U.S. at 21). This standard "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* (quoting *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999)). We assess the reasonableness of the stop "by conducting a fact-intensive, totality-of-the circumstances inquiry," *id.*, and considering the "information available to the officer[s] at the time of the decision to stop a person." *United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992).

"[A]n alert or BOLO report may provide the reasonable suspicion necessary to justify an investigatory stop." *Rodriguez*, 564 F.3d at 742 (alteration in original) (quoting *Gonzalez*, 190 F.3d at 672). "Whether a particular . . . BOLO report provides a sufficient basis for an investigatory stop may depend upon . . . the specificity of the information contained in the . . . report, the extent to which the information in the . . . report can be verified by officers in the field, and whether the . . . report concerns active or recent activity, or has instead gone stale." *Gonzalez*, 190 F.3d at 672. During an investigatory stop, officers may make protective sweeps of the immediate area "as a precautionary matter," but a search beyond that requires "articulable facts which, taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). These searches must be "aimed at protecting the arresting officers" and "last[] no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 335-36. Although such sweeps generally "may extend only to a cursory inspection of those spaces where a person may be found," *id.* at 335, a protective

No. 12-50044

sweep for weapons during a traffic stop is justified where the officers reasonably believe that someone within police custody might gain access to weapons, either during the traffic stop or once they are returned to their vehicles. *See Michigan v. Long*, 463 U.S. 1032, 1048 (1983); *United States v. Wallen*, 388 F.3d 161, 166 (5th Cir. 2004).

The plaintiffs have not shown that the officers violated any clearly established constitutional rights of the plaintiffs in conducting the search of Davila's vehicle. As the Supreme Court has recognized, "roadside encounters between police and suspects are especially hazardous." *Long*, 463 U.S. at 1049. The BOLO stated that a fugitive was wanted for assaulting Border Patrol agents. The NPS Rangers also saw that the car was not far from the national border and heading in a southbound direction. *See United States v. Rangel-Portillo*, 586 F.3d 376, 380 (5th Cir. 2009) (concluding that, while proximity to the border does not alone constitute reasonable suspicion to stop and search a vehicle, it "is afforded great weight in this Court's Fourth Amendment analysis"). In reviewing the information available to the NPS Rangers at the time of the search, we conclude that they had reasonable suspicion that a fleeing felon might be hidden in the vehicle or have weapons in the vehicle, and were justified in conducting a protective sweep of the car. Therefore, they did not violate any of the plaintiffs' clearly established constitutional rights against illegal search and seizure under the Fourth Amendment. Accordingly, we affirm the district court's grant of summary judgment in favor of the NPS Rangers on the basis of qualified immunity for the illegal search and seizure claims arising out of the Big Bend traffic stop.

### b. Excessive Use of Force Claim

Davila and Duarte also failed to show that the NPS Rangers violated their Fourth Amendment rights by using excessive force during the Big Bend traffic stop. To state a Fourth Amendment excessive force claim, the plaintiffs must

No. 12-50044

"show that [they were] seized" and "that [they] suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). This is a fact-specific inquiry to be made from the perspective of an objectively reasonable officer at the scene, rather than in hindsight. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* Officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985); *see also United States v. Campbell*, 178 F.3d 345, 348-49 (5th Cir. 1999). This authorizes both protective sweeps and the use of reasonable force. Law enforcement officers may also take reasonable steps to assert command of the situation. "The risk of harm to both the police and the occupants [of a stopped vehicle] is minimized . . . if the officers routinely exercise unquestioned command of the situation." *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (alteration in original) (citations and quotation marks omitted).

When the traffic stop began, the NPS Rangers surrounded the Kia with their guns drawn. They kept their guns drawn and aimed at Davila and Duarte during the search. Davila, Duarte, and Davila's grandson were placed in handcuffs and required to kneel on the ground during the duration of the search, and were then placed into separate law enforcement vehicles while the officers checked their identity. They remained in handcuffs until another officer arrived at the scene and ordered the rangers to release them. Duarte was forced to kneel beside the muffler of a law enforcement vehicle that was still running during part of the search. All three occupants complied at all times with the rangers.

The plaintiffs pleaded that they suffered bodily injury, pain and suffering, emotional distress, and mental anguish in the course of the seizure.

The plaintiffs adequately pleaded that they suffered injuries during the seizure. However, the injuries did not result from force that was excessive or objectively unreasonable because the NPS Rangers' use of force was not excessive in light of the totality of the circumstances at the time of the traffic stop. Where, as in the present case, a car has been legitimately stopped by law enforcement officers, requesting occupants to step out of the vehicle is a "*de minimis* additional intrusion*" that is outweighed by the government's "legitimate and weighty interest in officer safety." *Johnson*, 555 U.S. at 331 (citations and quotation marks omitted). This is particularly true where there are several occupants in a vehicle and the officials believe one to be dangerous. *See, e.g.*, *United States v. Tellez*, 11 F.3d 530, 533 (5th Cir. 1993). Furthermore, the NPS Rangers were justified in drawing their weapons during the traffic stop because they had reason to believe that an occupant of the car might be dangerous. *See United States v. Bullock*, 71 F.3d 171, 179 (5th Cir. 1995). For the same reason, they were justified in handcuffing the plaintiffs and requiring them to kneel down. *See, e.g.*, *United States v. Sanders*, 994 F.2d 200, 207-08 (5th Cir. 1993) (concluding that officers were authorized to handcuff Sanders instead of relying solely on their aiming guns at him); *see also id.* at 207 (noting that "[i]f a suspect complies with a police order to lie face down on the ground, his ability to fight or flee is significantly reduced, thereby helping to preserve the status quo").

As a result of the search, the NPS Rangers were able to ascertain that Tocho was not in the car and that the plaintiffs were not armed. However, they did not have these facts before them when they searched the vehicle. They approached a vehicle after receiving a BOLO that had been issued that day, warning them that a fugitive was associated with, and might be riding in, the

15

Kia. They also knew that the fugitive had previously assaulted law enforcement officers. Given the information at their disposal, their decision to handcuff the plaintiffs, to make them kneel outside the vehicle, and to draw their weapons on the plaintiffs did not constitute excessive force. Therefore, we affirm the district court's grant of summary judgment in favor of the NPS Rangers on the basis of qualified immunity for the excessive force claims arising out of the Big Bend traffic stop.

### 2. FTCA Claims (Counts 7, 8, 9, and 10)

The plaintiffs brought four claims against the United States under the FTCA arising out of the Big Bend traffic stop: assault (Count 7); intentional infliction of emotional distress (Count 8); false imprisonment (Count 9); and negligence (Count 10). The district court dismissed these claims for failure to state a claim upon which relief may be granted. The plaintiffs abandoned their appeal as to the district court's dismissal of Count 8 by failing to argue it in its brief before this Court, thereby waiving it on appeal. *See Yohey*, 985 F.2d at 224-25 ("[Plaintiff] has abandoned these arguments by failing to argue them in the body of his brief."). They continue to appeal the dismissal of the assault, false imprisonment, and negligence claims. We review the district court's dismissal of these claims de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Brown v. Continental Airlines, Inc.*, 647 F.3d 221, 225-26 (5th Cir. 2011) (citation and quotation marks omitted).

### a. Assault Claim

The United States has waived its immunity where its law enforcement officers commit an enumerated intentional tort.  28 U.S.C. § 2680(h). "Liability under the FTCA is determined 'in accordance with the law of the place where the act or omission occurred.'" *Villafranca v. United States*, 587 F.3d 257, 260 (5th Cir. 2009) (quoting 28 U.S.C. § 1346(b)). In Texas, a person commits the

intentional tort of assault—which is identical to criminal assault—if he: "(1) intentionally, knowingly, or recklessly causes bodily injury to another . . . ; (2) intentionally or knowingly threatens another with imminent bodily injury . . .; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Penal Code Ann. § 22.01 (Vernon 2005). Texas law also provides a "civil privilege defense." The statute provides, in pertinent part, that a "peace officer . . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest or search . . . if: the actor reasonably believes the arrest or search is lawful . . . ; and before using force, the actor . . . identifies himself as a peace officer." *Id.* § 9.51(a). The Texas Penal Code defines "peace officer" as "a person elected, employed, or appointed as a peace officer under Article 2.12, Code of Criminal Procedure or 51.214, Education Code, *or other law.*" *Id.* § 1.07(a)(36) (emphasis added).

Federal officers are peace officers for the purpose of the Texas criminal assault statute and its civil privilege defense. *See Villafranca*, 587 F.3d at 264 ("[W]e hold that the Government can invoke [the civil privilege defense] for its law enforcement officers as well."). Therefore, federal law enforcement officers, including the NPS Rangers, are protected by the Texas civil privilege defense. *See* 16 U.S.C. § 1a-6(b) (providing that NPS rangers "shall maintain law and order and protect persons and property within areas of the National Park System," and authorizing such rangers to carry firearms, make arrests, execute warrants, and conduct investigations in furtherance of their duties).

For the defense to apply, the NPS Rangers must have "reasonably believe[d] the force [was] immediately necessary to make or assist in making an arrest or search." Tex. Penal Code Ann. § 9.51(a). As we have already

No. 12-50044

established, the NPS Rangers' use of force against Davila, Duarte, and Davila's grandson was reasonable, given the totality of circumstances of the traffic stop.

### b. False Imprisonment Claim

Neither is the government liable under the FTCA for the NPS Rangers' actions in detaining the plaintiffs during the Big Bend traffic stop. Under Texas law, "[t]he elements of false imprisonment are (1) willful detention, (2) without consent, and (3) without authority of law." *Martinez v. English*, 267 S.W.3d 521, 529 (Tex. App. 2008) (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002)). Therefore, an officer acting with the authority of law does not commit false imprisonment.

The district court correctly determined that the NPS Rangers acted with authority of law. The NPS Rangers are federal agents who are authorized by the government to:

> (1) carry firearms and make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed or is committing such felony, provided such arrests occur within that system or the person to be arrested is fleeing therefrom to avoid arrest;
> (2) execute any warrant or other process issued by a court or officer of competent jurisdiction for the enforcement of the provisions of any Federal law or regulation issued pursuant to law arising out of an offense committed in that system or, where the person subject to the warrant or process is in that system, in connection with any Federal offense; and
> (3) conduct investigations of offenses against the United States committed in that system in the absence of investigation thereof by any other Federal law enforcement agency having investigative jurisdiction over the offense committed or with the concurrence of such other agency.

16 U.S.C. § 1a-6(b). The NPS Rangers responded reasonably after receiving a BOLO that Davila's vehicle was associated with and may have contained a

18

fugitive who had previously assaulted border patrol agents. They did not overstep their constitutional bounds, and were acting within the authority of law as stipulated in § 1a-6(b). Because the plaintiffs failed to allege that the NPS Rangers committed the intentional tort of false imprisonment, the district court correctly dismissed this claim for failure to state a claim upon which relief may be granted.

### c. Negligence Claim

Finally, the plaintiffs appeal the district court's dismissal of their FTCA claim of negligence against the government. The plaintiffs claimed that Unknown CBP Agents were negligent in issuing a BOLO on Davila's car without first conducting a proper review of CBP records to ascertain whether Tocho was still associated with the car. Because the claim was dismissed for lack of subject-matter jurisdiction, we review the district court's dismissal de novo, "accept[ing] all of the nonmovant's well-pleaded factual allegations as true." *Jeanmarie*, 242 F.3d at 602.

Congress has carved out several exceptions to the FTCA's broad waiver of immunity. One of these exceptions protects the government from suits that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary-function exception "covers . . . acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (second alteration in original) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Because there is no element of choice "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," *id.* at 322 (internal quotation marks and citations omitted), the exception "does not apply if the challenged actions in fact violated a federal statute, regulation, or policy." *Spotts*

*v. United States*, 613 F.3d 559, 567 (5th Cir. 2010). To fall within the exception, an act must satisfy a two-part test. "First . . . the challenged act must involve an element of judgment. In other words, the Government needs to establish there was 'room for choice' in making the allegedly negligent decision." *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007) (quoting *Gaubert*, 499 U.S. at 322-23). Second, the judgment must be "of the kind that the exception was designed to shield." *Id.* Under this second prong, "the proper inquiry . . . is not whether [the government actor] *in fact* engaged in a policy analysis when reaching his decision but instead whether his decision was 'susceptible to policy analysis.'" *Spotts*, 613 F.3d at 572 (quoting *Gaubert*, 499 U.S. at 325). Only if both prongs of the test are met will the discretionary-function exception apply. *Ashford*, 511 F.3d at 505.

Here, the plaintiffs have not pleaded facts sufficient to demonstrate that the discretionary-function exception is inapplicable to the issuance of the BOLO. The plaintiffs alleged that the defendants were negligent in failing to properly review CBP records before issuing the BOLO, because such a review would have revealed that Tocho was no longer associated with the car, though they admit that Tocho had used the car several months prior to the Big Bend traffic stop. They do not point to a specific policy that governs the issuance of a BOLO or the running of a record search prior to issuing a BOLO. The plaintiffs claim only that there might be such a policy. However, the government asserts that no such policy exists, and the plaintiffs have not pleaded facts or provided evidence to the contrary. *Cf. Ashford*, 511 F.3d at 505 (concluding that the government failed to satisfy step one of the discretionary-function test because two witnesses testified that there was a policy in place that required the prison officials to take certain actions that they did not take). Nor do the plaintiffs allege or point to evidence that the officer lacked discretion in determining that there was sufficient

information pertaining to Tocho's association with the red Kia to warrant issuing the BOLO.

The plaintiffs sought limited discovery on this issue, asserting that such discovery would allow them to seek proof that such a policy existed. The district court denied their request, and the plaintiffs appeal. We review for abuse of discretion. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005). As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery. *See Freeman v. United States*, 556 F.3d 326, 341-42 (5th Cir. 2009). They are "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Id.* at 342. Moreover, the burden is greater where, as in the present case, "the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *Id.* The plaintiffs have not met this burden. They alleged only that there may be a government policy governing BOLOs, and alleged no well-pleaded facts or evidence to refute the government's assertion to the district court that no such policy exists. As such, we cannot conclude that the district court abused its discretion in denying the plaintiffs' request.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's dismissal of Davila's FTCA claim against the government arising out of his January 7, 2009 interrogation and arrest (Count 2); AFFIRM the district court's dismissal of the plaintiffs' Fourth Amendment claims against the NPS Rangers arising out of the Big Bend traffic stop (Counts 5 and 6); and AFFIRM the district court's dismissal of all four FTCA claims arising out of the Big Bend traffic stop (Counts 7, 9, and 10).