# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-40168

---

Ismael Rincon,

Plaintiff—Appellant,

*versus*

City of Laredo, Texas; Arturo Benavides; Robert Fernandez, Jr.; Ernesto Elizondo, III, *in his official and individual capacities*,

Defendants—Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:21-CV-45

---

Before Smith, Clement, and Duncan, *Circuit Judges*.

Per Curiam:[*]

In April 2019, officers from the Laredo Police Department handcuffed and searched Plaintiff-Appellant Ismael Rincon on his own property, located on the shoreline of the Rio Grande River, on the U.S. side of the border. Based on this encounter and proceeding *pro se*, Rincon sued the officers and the City of Laredo, Texas, asserting violations of his rights under the First

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-40168

and Fourth Amendments. The district court granted the defendants judgment on the pleadings as to most of Rincon's claims, allowing two to proceed to discovery. After discovery, the defendants moved for summary judgment on the two remaining claims, and the district court granted the motion. Rincon appeals the dismissal of his claims. We AFFIRM.

## I.

## A.

Rincon owns an empty, unimproved plot of land along the northern shoreline of the Rio Grande River in Laredo, Texas. Rincon regularly parked his Ford truck at this plot, and in March 2019, the truck was vandalized. To prevent any further vandalism or trespass, Rincon began patrolling his property at night, armed with a long rifle. Shortly after midnight on April 27, 2019, Rincon, with his rifle slung over his shoulder, made his usual patrol.

Unbeknownst to Rincon, a gun battle between the Mexican military and a drug cartel had erupted the day before on the Mexican side of the border near the Rio Grande. A stray bullet from this firefight struck a U.S. citizen living in Laredo, prompting Border Patrol and the Laredo Police Department to initiate Operation Stonegarden to search for criminal suspects fleeing from Mexico. As part of this operation, Officer Ernesto Elizondo III was stationed near a public park located next to the empty lot that Rincon was patrolling.

On April 27, Elizondo observed Rincon, his rifle in hand, walking the empty lot, which Elizondo believed to be part of the public park. Elizondo approached Rincon and asked him if he was with Border Patrol; Rincon replied that he was not. Elizondo asked for identification, which Rincon refused to provide. Elizondo then called for backup on his radio and aimed his sidearm at Rincon's chest. Elizondo took possession of Rincon's rifle and holstered his sidearm.

No. 24-40168

Additional officers arrived at the scene, including Officer Arturo Benavides, whose dashcam and bodycam footage Rincon attached to his complaint.[1] Elizondo stepped away to inspect Rincon's rifle as additional officers approached Rincon, who began recording the encounter with his cell phone. After Rincon repeatedly asked Elizondo for his name, Elizondo walked back over and tried to grab the cell phone out of Rincon's hand. According to Rincon, "[Elizondo] immediately began to push the phone into [Rincon's] chest and throat, forcing [Rincon] back several feet, while attempting to remove the phone out of [Rincon's] hand." Once Elizondo secured the phone, he ordered Officer Robert Fernandez, Jr. to handcuff Rincon.

In order to handcuff him, Fernandez twisted Rincon's wrist and arm, and Rincon responded that this was hurting him. With Fernandez holding the handcuffs, he and Elizondo searched Rincon's pockets, and Rincon continued to protest that he was in pain. Elizondo responded that this was because Rincon was resisting. Rincon contends that Fernandez continued to twist the handcuffs until Rincon heard his shoulder pop, causing him to exclaim in pain. Rincon remained in handcuffs for approximately fifteen minutes while the officers reviewed Rincon's identification from his wallet and ran his name for outstanding warrants. While Rincon was handcuffed, Benavides told him that "there was a shooting just a little bit ago in this area."

After about fifteen minutes, the officers removed the handcuffs and returned the cell phone to Rincon, at which point he began to record the encounter again. Elizondo held Rincon's rifle and spoke to him, while

---

[1] "Where video recordings are included in the pleadings, . . . the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video blatantly contradicts those allegations." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (cleaned up).

Benavides shined his flashlight at Rincon. As Rincon filmed, Elizondo explained that there was recently a shooting nearby in Mexico that injured someone on the U.S. side of the border. Elizondo then grabbed Rincon's phone from his hand for the second time and returned it to him seconds later. Once Elizondo returned the rifle, the officers continued conversing with Rincon, and the encounter ended shortly thereafter.

**B.**

Proceeding *pro se*, Rincon filed suit in district court against the City of Laredo and officers Elizondo, Benavides, and Fernandez under 42 U.S.C. § 1983 for various constitutional violations. Rincon asserted the following claims: (1) a First Amendment claim against Elizondo for infringing on Rincon's right to film the police by confiscating his phone twice; (2) an unreasonable-seizure claim under the Fourth Amendment against Elizondo for the same confiscations; (3) an unreasonable-search-and-seizure claim under the Fourth Amendment against Elizondo and Fernandez for handcuffing Rincon, searching him, and seizing his wallet; (4) an excessive-force claim under the Fourth Amendment against Elizondo for pushing Rincon's phone into his neck and chest while trying to grab it; (5) an excessive-force claim against Fernandez for hurting Rincon's wrist and shoulder; (6) a First Amendment claim against Benavides for preventing Rincon from filming the police by shining a flashlight into the cell phone camera; and (7) a failure-to-train claim against the city.

The defendants filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, in the alternative, a motion for a more definite statement under Rule 12(e). The district court granted the motion for judgment as to claims (3), (5), and (7)—the unreasonable-search-and-seizure claim against Elizondo and Fernandez, the excessive-force claim against Fernandez, and the failure-to-train claim, respectively. The court

4

dismissed these claims with prejudice. As to the remaining claims, the district court identified deficiencies in Rincon's allegations, but recognizing Rincon's *pro se* status, the court gave him sixty days to fix the deficiencies and file another complaint.[2]

Rincon filed his updated complaint, but the district court determined that he had not corrected all the deficiencies identified. As a result, it dismissed claims (1) and (6)—the First Amendment claims—leaving only (2) and (4): respectively, the unreasonable-seizure claim and the excessive-force claim, both of which were based on the confiscations of Rincon's cell phone.

Discovery ensued, and the defendants moved for summary judgment on the remaining two claims. The district court granted this motion, dismissing Rincon's final two claims with prejudice. Rincon appealed the district court's dismissals and filed briefs before this court *pro se*.

## II.

We start with Rincon's claims dismissed via judgment on the pleadings, namely: (A) the unreasonable-search-and-seizure claim, (B) the First Amendment claims, (C) the excessive-force claim against Fernandez, and (D) the failure-to-train claim.

"We review a district court's ruling on a Rule 12(c) motion for judgment on the pleadings *de novo*," using "the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). This standard requires us to "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per

---

[2] The district court ordered a third amended complaint, as Rincon had already amended twice before.

curiam). "[A] plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello*, 627 F.3d at 544 (cleaned up) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**A.**

Rincon brought a Fourth Amendment claim against Elizondo and Fernandez for their allegedly unreasonable detention of Rincon and search of his wallet "absent [a] warrant, or other valid cause." The district court determined that this detention was a valid *Terry* stop. Under *Terry*, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "We determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." *Davila v. United States*, 713 F.3d 248, 258 (5th Cir. 2013) (cleaned up).

"The police officer must have reasonable suspicion to justify the investigative stop, which requires the police officer . . . to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* (internal quotations omitted). "This standard requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* (internal quotations omitted). "We assess the reasonableness of the stop by conducting a fact-intensive, totality-of-the circumstances inquiry, and considering the information available to the officers at the time of the decision to stop a person." *Id.* (cleaned up).

No. 24-40168

The district court found that Elizondo and Fernandez had reasonable suspicion to stop and briefly detain Rincon, and we agree. The officers were actively investigating a recent shooting near the Rio Grande, and Rincon was seen late at night walking an empty lot near the river, openly carrying a rifle in his hands. Rincon refused to identify himself, and the officers informed him multiple times during the detention that they were concerned about a recent, nearby shooting. The Supreme Court has "noted the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). We have found reasonable suspicion based on "[an] encounter occurring in the middle of the night in a reputed high crime area coupled with [the defendant] carrying a firearm and attempting to flee." *United States v. Gomez*, No. 23-20068, 2024 WL 3842572, at *3 (5th Cir. Aug. 16, 2024). While Rincon did not attempt to flee, he was carrying a firearm in the middle of the night near the scene of a shooting, and he refused to identify himself.

On appeal, Rincon argues that Elizondo admitted in his deposition that he did not suspect Rincon of committing any crime that night and therefore reasonable suspicion was absent. But the district court's holding was based on Rincon's allegations alone, not on evidence later uncovered during discovery. In any event, "[r]easonable suspicion and probable cause are *objective* inquiries; 'an officer's subjective intentions have no impact' on either analysis." *Smith v. Heap*, 31 F.4th 905, 912 n.6 (5th Cir. 2022) (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 432 (5th Cir. 2005)). The question is whether the facts available to the officer at the time of the search or seizure, when viewed objectively, support the officer's actions. *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc). The facts confronting Elizondo and his fellow officers provided reasonable suspicion. Thus, as the district court concluded, "[u]nder the totality of the circumstances, it was reasonable for Elizondo and Fernandez to briefly stop

7

and detain [Rincon] while they confirmed his identity and landownership and ensured that he was not connected to the recent shooting in the area." *United States v. Brigham*, 382 F.3d 500, 507 (2004) (en banc) ("[A] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges.").[3]

Lastly, the district court held that Elizondo and Fernandez were entitled to qualified immunity as to Rincon's claim that they unreasonably searched his wallet for identification.[4] More specifically, the district court found that at the time of Elizondo's and Fernandez's search, no controlling caselaw established that a *Terry* pat down cannot include a search of the suspect's wallet for identification. *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) ("To answer [whether the law is clearly established] in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." (cleaned up)).

Indeed, in *Emesowum v. Cruz*, officers stopped the plaintiff and searched his wallet during a *Terry* stop. 756 F. App'x 374, 376–77 (5th Cir. 2018). This court determined that that search did not violate the plaintiff's

---

[3] The district court concluded that handcuffing Rincon was reasonable given "the reasonable inference that [Rincon] could have been concealing another weapon on his person," and in light of this court's recognition that handcuffing can be reasonable during an investigatory stop, *Heap*, 31 F.4th at 911. Rincon does not address this point on appeal. "A party forfeits an argument by failing . . . to adequately brief the argument on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

[4] Elizondo and Fernandez were entitled to demand Rincon's identification because, as the district court noted, "[u]nder the Fourth Amendment, police officers may not require identification absent an otherwise lawful detention or arrest based on reasonable suspicion or probable cause." *See Johnson v. Thibodaux City*, 887 F.3d 726, 733 (5th Cir. 2018).

clearly established rights, citing the proposition that "[a]n officer may check an individual's identification in his wallet during a [*Terry*] stop." *Id.* at 381 n.3 (quoting *United States v. Brown*, 366 F.3d 456, 461 (7th Cir. 2004)); *see also McCullough v. Wright*, 824 F. App'x 281, 287 (5th Cir. 2020) (per curiam) ("McCullough has failed to show that it is clearly established that a limited search for the sole purpose of procuring identification, after an uncooperative arrestee refuses numerous requests to identify herself, violates the Fourth Amendment."). We therefore agree that Elizondo and Fernandez are entitled to qualified immunity for searching Rincon's wallet. We affirm the district court's dismissal of Rincon's unreasonable-search-and-seizure claim.

## B.

Next, we consider Rincon's First Amendment claims. "As a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (cleaned up). We have held that "a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions." *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves*, 587 U.S. at 398 (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

> For a First Amendment retaliation claim, a plaintiff must demonstrate: (1) she was engaged in constitutionally protected activity; (2) the officer's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions

9

No. 24-40168

were substantially motivated against her exercise of constitutionally protected activity.

*Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021).

The district court considered and dismissed three possible bases for Rincon's First Amendment claims: (1) Elizondo's first confiscation of Rincon's cell phone, (2) Elizondo's second confiscation, and (3) Benavides's shining his flashlight into the cell phone camera.

**1.**

With respect to Elizondo's first confiscation of Rincon's cell phone, lasting approximately fifteen minutes, the district court held that "the current allegations do not plausibly show the shoving or the confiscation was substantially motivated by the recording." According to the district court, this was because "other circumstances unfolding at the time indicate Elizondo may have had other reasons to forcefully confiscate [Rincon's] phone." But the applicable standard is not whether the plaintiff's allegations rule out every motivation for the officer's actions besides retaliatory animus; it is whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rincon alleged that once he began recording and asking Elizondo for his name, the officer walked over and tried to grab the phone, shoving Rincon and his phone in the process. While it is possible Elizondo acted in this fashion with non-retaliatory motives, one could reasonably infer that he was substantially motivated by Rincon's recording.[5] We find Rincon has plausibly alleged a claim for First Amendment retaliation.

_____

[5] Considering possible non-retaliatory reasons for Elizondo's confiscation, the district court questioned, "Was [Rincon] aggressively approaching Elizondo as Elizondo

No. 24-40168

However, Elizondo asserted the defense of qualified immunity, and "we can affirm the lower court's decision on any grounds supported by the record." *United States v. McSween*, 53 F.3d 684, 687 n.3 (5th Cir. 1995). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). With respect to Elizondo's first confiscation, Rincon adequately pleaded a violation of his First Amendment rights.

The next step in the qualified-immunity analysis is whether the plaintiff has shown that the right violated was "clearly established" at the time of the challenged conduct. *Morgan*, 659 F.3d at 371. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

> The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."

*Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (cleaned up) (quoting *Mullenix*, 577 U.S. at 12).

---

was examining [Rincon's] weapon?" But puzzlingly, the dashcam footage that the district court reviewed depicts Rincon standing still and Elizondo approaching him prior to confiscation, not vice versa. Additionally, Rincon alleged that Elizondo walked over to him—an allegation the district court had to credit as true when considering the motion for judgment on the pleadings. *Stokes*, 498 F.3d at 484.

11

No. 24-40168

Rincon has not presented, and we are unaware of, either controlling authority or a robust consensus of persuasive authority clearly establishing, at the time of Elizondo's actions, that an officer violates the First Amendment by confiscating the phone of an armed, unidentified, and uncooperative criminal suspect for fifteen minutes while he is handcuffed during a *Terry* stop. *See Morgan*, 659 F.3d at 371–72. While our *Turner* decision clearly established a First Amendment right to record the police, 848 F.3d at 688, the facts of that case are significantly different and therefore shed no light on "the violative nature of [Elizondo's] *particular* conduct." *Mullenix*, 577 U.S. at 12 (internal quotations omitted); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) ("Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful." (internal quotations omitted)); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) ("It is important to emphasize that this [clearly-established] inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))). In *Turner*, officers arrested an unarmed plaintiff who was videotaping a police station from a public sidewalk across the street and who refused to identify himself. 848 F.3d at 683–84, 694. Here, Elizondo confiscated the phone of an armed individual suspected of being connected with a nearby shooting, before handcuffing him as part of a valid *Terry* stop.[6] Although a case directly on point is unnecessary, we cannot say that, based on *Turner* alone, the constitutional question here is "beyond debate." *See White v. Pauly*, 580 U.S.

---

[6] Notably, the *Turner* court did not determine whether the officers had reasonable suspicion. 848 F.3d at 691 ("Even if we assume *arguendo* that Grinalds and Dyess violated Turner's Fourth Amendments rights by detaining him without reasonable suspicion . . . ."). Here, we have affirmed the district court's finding of reasonable suspicion. *See supra* Section II.A.

73, 79 (2017). Therefore, Elizondo is entitled to qualified immunity as to Rincon's First Amendment claim based on the initial confiscation.

**2.**

As to Elizondo's second confiscation of Rincon's cell phone, lasting a matter of seconds and followed by no adverse consequences, the district court held that Rincon failed to allege that this act "would have chilled the recording activity of an individual of ordinary firmness." We have stated that "some retaliatory actions—even if they actually have the effect of chilling the plaintiff's speech—are too trivial or minor to be actionable as a violation of the First Amendment." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *see also Johnson v. Bowe*, 856 F. App'x 487, 492–93 (5th Cir. 2021) (dismissing retaliation claim because enduring criticism and being followed by a police officer were not substantial enough injuries to chill a person of ordinary firmness). In fact, Benavides's bodycam footage shows that Rincon continued filming the police after Elizondo returned the cell phone to him, suggesting that the brief, six-second confiscation had no chilling effect. We affirm the district court's grant of judgment on the pleadings as to this claim.

**3.**

Lastly, Rincon brought a First Amendment claim against Benavides for shining his flashlight at the cell phone camera. The district again determined that Rincon had failed to allege an action that would chill a person of ordinary firmness, and Rincon does not dispute this determination on appeal. *See Rollins*, 8 F.4th at 397. We affirm.

**C.**

Next, Rincon asserted a Fourth Amendment claim of excessive force against Fernandez for injuring Rincon's wrist and shoulder while handcuffing him. "To prevail on an excessive-force claim, a plaintiff must show '(1) an

injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable.'" *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Factors that inform the need for force include "the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.*

The district court concluded that Rincon's allegations failed to show that Fernandez's actions were clearly excessive or objectively unreasonable. First, the court observed that Rincon admitted to resisting arrest by conceding that "[he] suffered injury to his wrists and shoulder *when he attempted to turn away and prevent the search and seizure*." Second, the court referenced Benavides's bodycam footage, which depicts Rincon jerking his hands away from Fernandez, followed by officers telling Rincon he was resisting and should "settle down." These facts are relevant to the third factor above: whether the suspect was resisting arrest. *Graham*, 490 U.S. at 396. Next, considering the first factor, the court noted that Rincon was under suspicion for "possible involvement in a cross-border shooting, which implicates serious criminal activity." Based on these considerations, the district court dismissed Rincon's excessive-force claim against Fernandez.

Rincon fails to challenge the district court's reasoning on appeal. Instead, Rincon reiterates that his shoulder was injured, but he simultaneously acknowledges that the "core judicial inquiry" in the context of excessive force has shifted "from the extent of the injury to the nature of the force." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam). Indeed,

No. 24-40168

"the objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).

We have held that "[r]esisting while being handcuffed constitutes active resistance and justifies the use of at least some force." *Hutcheson v. Dallas County*, 994 F.3d 477, 480 (5th Cir. 2021). In *Collier v. Montgomery*, we determined that the plaintiff's resistance, captured in video evidence, justified the officer's use of force in grappling with the plaintiff and pushing him onto the hood of a police car. 569 F.3d 214, 219 (5th Cir. 2009). As the district court found here, Rincon conceded to resisting, and the video evidence confirms as much. We affirm the district court's dismissal of Rincon's excessive-force claim against Fernandez.

## D.

The last claim dismissed via judgment on the pleadings was the failure-to-train claim against the City of Laredo. "Under the decisions of the Supreme Court and this court, municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The district court found that Rincon failed to plead the existence of a policymaker. While we agree, we also note that Rincon failed to describe any official policy with concrete facts. *See Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."). Rincon attempts to identify a policy for the first time on appeal, but "[a] party forfeits an argument by failing to raise it

in the first instance in the district court—thus raising it for the first time on appeal." *Rollins*, 8 F.4th at 397. We affirm the district court's dismissal of Rincon's failure-to-train claim.

## III.

We now consider Rincon's claims dismissed via summary judgment: (A) the Fourth Amendment unreasonable-seizure claim against Elizondo for confiscating Rincon's phone twice, and (B) the Fourth Amendment excessive-force claim against Elizondo for allegedly shoving Rincon's phone into his throat and chest.

A grant of summary judgment is reviewed de novo. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

As outlined above, Elizondo confiscated Rincon's phone twice as part of the *Terry* stop. The reasonableness of such a stop turns on "(1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." *Davila*, 713 F.3d at 258 (internal quotations omitted). The district court found that Elizondo's first confiscation was reasonably related to the scope of the stop because it allowed the officers to properly detain and identify Rincon.

As for the second confiscation, lasting a matter of seconds, the district court doubted whether this even constituted a seizure but nevertheless determined that even if it did, Elizondo is entitled to qualified immunity. A seizure of property within the meaning of the Fourth Amendment occurs

when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Some district courts have doubted whether a seconds-long confiscation of a cell phone, returned immediately after, constitutes a meaningful interference with the owner's possessory interest. *See, e.g.*, *Blakely v. Andrade*, 360 F. Supp. 3d 453, 481 (N.D. Tex. 2019) (finding no seizure when officers returned phone to plaintiff "in less than 30 seconds"); *Harris v. City of Lubbock*, No. 5:17-CV-010, 2017 WL 4479950, at *4 (N.D. Tex. June 16, 2017) (finding no violation where an officer briefly confiscated the plaintiff's cell phone but returned it "only moments later without searching its contents"); *Ordonez v. Gonzalez*, No. EP-23-CV-99, 2024 WL 1250181, at *12 (W.D. Tex. Mar. 25, 2024).

On appeal, Rincon does not address his Fourth Amendment claim based on Elizondo's confiscations. Rincon's only mention of an "unlawful . . . seizure of . . . his cell phone" appears in the conclusion section of his brief. Rincon failed to adequately brief this claim on appeal and has therefore forfeited it. *See Rollins*, 8 F.4th at 397; *Cinel v. Connick*, 15 F.3d 1338, 1346 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."). We affirm on that basis alone.

**B.**

Lastly, the district court considered Rincon's excessive-force claim against Elizondo for allegedly shoving him in the chest and throat while grabbing his cell phone. The district court cited deposition testimony presented by the defendants that Rincon did not experience any bruising or abrasions to his chest or neck area after the encounter. This shifted the burden to Rincon to come forward with some evidence of injury, which the district court found he failed to do. Rincon has not identified any record evidence indicating an injury on appeal. We affirm.

No. 24-40168

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissals of Rincon's claims.