**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 15, 2012

Lyle W. Cayce
Clerk

Nos. 10-31266 & 11-30306

SHANE BELLARD,

      Plaintiff - Appellant

v.

SID J. GAUTREAUX, III, Individually and in his official capacity as Sheriff of East Baton Rouge Parish, State of Louisiana,

      Defendant - Appellee

Appeals from the United States District Court
for the Middle District of Louisiana

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

      Appellant Shane Bellard was dismissed from the East Baton Rouge police training program after falling asleep in class and purportedly making inappropriate sexual comments. He demanded a name-clearing hearing from the East Baton Rouge Parish Sheriff, Sid Gautreaux, but was denied. Bellard then brought federal and state law claims against the Sheriff for his failure to grant a name-clearing hearing and for potentially defamatory statements made regarding Bellard's dismissal. The district court granted the Sheriff summary judgment on all of Bellard's claims.  Bellard appeals the dismissal of his federal

Nos. 10-31266 & 11-30306

and state law claims. On appeal, we AFFIRM the ruling of the district court on all points.

## FACTS AND PROCEEDINGS

Shane Bellard was employed by the East Baton Rouge Sheriff's Office as a deputy sheriff and was enrolled as a cadet in the Capital Area Regional Training Academy ("CARTA"). During training, Bellard was not a model cadet and showed up late and fell asleep in class on multiple occasions. He was also sent home from the firing range for taking the prescription medication Ambien while operating firearms. After three violations for tardiness, intoxication at the range, and sleeping in class, Captain Venable, head of CARTA, recommended that he be excused from the academy.

Bellard was sent to Human Resources ("HR") because of his problems. Two female students, Carla Coburn and Holly Thompson, also came forward with complaints about his behavior. According to their deposition testimony, Bellard made comments of a sexual nature to them. A few weeks after entering the training program, Bellard was eating lunch at the Academy when Coburn asked him what he was eating. Bellard responded that he was eating a MRE (Meal Ready to Eat) and that he ate MRE's because "it makes you hard." According to Coburn, he made this statement while gesturing with his right arm in a manner she took to be sexual. Thompson took the gesture to mean "his manhood." Bellard admits making this comment but denies he intended it to be sexual. Upon further questioning, Coburn and Thompson explained that Bellard had previously made them feel uncomfortable by insinuating that he knew they were alone in their homes, and commenting how nice they looked in their uniforms. Upon learning of this information, Venable instructed Bellard to report to HR again. After being interviewed by HR personnel, he was issued a letter of termination dated January 24, 2008. The letter stated he was being terminated for sexual harassment.

2

Bellard then informed his father, Dennis Bellard, a former Baton Rouge police officer, of his termination. He told Dennis the reasons for the termination as well as the specific allegations made by Coburn and Thompson. Bellard also contacted Mike Knaps, a family friend and the Chief of Police in Baker, Louisiana. Bellard also told Knaps he was fired for sexual harassment and tardiness. Bellard asked Knaps to speak to the Sheriff on his behalf, which Knaps did. During their conversation, Knaps pushed the Sheriff to let Bellard resign rather than being fired. The Sheriff agreed, so long as Bellard did so in a timely fashion. According to Knaps, the Sheriff never spoke with him about the specific allegations of sexual harassment. Bellard ultimately rejected the offer of resignation in the hopes of pursuing civil damages.

Dennis Bellard also contacted two people about his son's termination. First he contacted Knaps, who told him that his son was terminated because of tardiness and sexual harassment. On his son's behalf, Dennis Bellard also contacted the Sheriff about his son's termination, although the two did not talk on the phone until weeks after the termination.

In addition to the conversations that were carried out on his behalf, Shane Bellard contacted Chief LeDuff, the Chief of Police of the Baton Rouge Police Department. This conversation forms the basis of Bellard's suit, but its substance is in dispute. Bellard claims that LeDuff stated that he had already heard of Bellard's termination prior to their conversation. LeDuff states that he did not hear anything about the termination until the conversation where Bellard told him that he was terminated and had been accused of sexual harassment, sleeping in class, and "inappropriate contact or works [sic]" with a female. LeDuff stated in his deposition that he believed Bellard was calling about the possibility of employment and that he told Bellard that he would have to call the Sheriff's office to find out more information. LeDuff called the Sheriff's office and was told that someone would get back to him. Eventually someone

Nos. 10-31266 & 11-30306

called him back and discussed Bellard's termination. According to LeDuff's testimony, this person was *not* the Sheriff. Finally, LeDuff testified during his deposition that Bellard's testimony about their conversation is incorrect and that if he did state to Bellard that he had heard about the termination from the Sheriff prior to hearing it from Bellard, it was only because he was "maybe fishing for information" from Bellard.

Through counsel, Bellard requested a name-clearing hearing to "prove his innocence on the charges for which he was fired and clear his name." He made his formal request on June 24, 2008. The request was rejected the next day by the Sheriff's counsel on the basis of Bellard's at-will employment under Louisiana law.  Bellard brought claims against the Sheriff in both his official and personal capacities under 42 U.S.C. § 1983. Bellard claims he was deprived of a federal liberty interest under the Louisiana and U.S. Constitutions when he was denied a name-clearing hearing after being terminated. Bellard also asserted  state law defamation claims against the Sheriff in his individual and official capacities alleging that the Sheriff orally published sexual harassment allegations against him to persons outside of the Sheriff's office. Bellard sought declaratory and injunctive relief, compensatory and punitive damages, and reinstatement of his employment.

The Sheriff moved for summary judgment which was granted in part and denied in part. Summary judgment was granted for the Sheriff in his individual and official capacities on the federal constitutional claims and granted for the Sheriff in his individual capacity on Bellard's state constitutional claims. The motion for summary judgment was denied for the official capacity state constitutional claims. In addition, the Sheriff's motion was granted on the state law defamation claims in his individual capacity, but denied in his official capacity. Bellard's claim for punitive damages, reinstatement, lost pay, and benefits were dismissed.

4

Nos. 10-31266 & 11-30306

After the district court's ruling, Bellard moved to alter or amend the prior ruling under Federal Rule of Civil Procedure 59(e). The district court altered the opinion to reinstate his federal liberty interest claims against the Sheriff in his individual capacity, subject to further development of the record regarding Chief LeDuff's conversations with personnel in the Sheriff's office. The court also reinstated Bellard's official and individual capacity claims under Louisiana constitutional law and his punitive damages claims under § 1983.

After the deposition of Chief LeDuff and supplemental briefings, the district court dismissed all of Bellard's remaining claims. The district court's decision hinged primarily on the conclusion that Bellard's statement that LeDuff told him he had already spoken with the Sheriff's office before their own conversation was double hearsay and as such was not competent evidence for summary judgment. There was no evidence that the information regarding his termination was disseminated by anyone other than Bellard himself or his agents. Bellard appeals.

**STANDARD OF REVIEW AND APPLICABLE LAW**

We review a district court's ruling on a motion for summary judgment *de novo* and apply the same legal standards as the district court. *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005). Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions

Nos. 10-31266 & 11-30306

will not satisfy the plaintiff's burden. *See Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Finally, and especially relevant to this case, on a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial. *Martin v. John W. Stone Oil Distrib., Inc*, 819 F.2d 547, 549 (5th Cir. 1987).

## DISCUSSION

### A. *Hearsay*

The district court determined that Bellard's statement that LeDuff told him he had already heard about Bellard's termination before their conversation was double hearsay and was prohibited from consideration on a motion for summary judgment. The district court further explained that it could be used as impeachment evidence should LeDuff take the stand. Bellard appeals this ruling by asserting that it is admissible hearsay and that the district judge's *sua sponte* ruling of hearsay was improper.

Bellard first argues that the supposed statement by LeDuff is admissible hearsay because it fits into one of the hearsay exceptions pursuant to Federal Rules of Evidence Rule 801(d)(2). 801(d)(2) provides that statements made by a party-opponent are not hearsay if it is: "(A) the party's own statement, in either an individual or representative capacity or . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Additionally, Rule 805 provides that "Hearsay included within hearsay is not excluded under the Hearsay Rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these Rules." Bellard claims his testimony about LeDuff's comments should be admitted as double hearsay with the first step–the conversation between LeDuff and the Sheriff–an admission by a party opponent, and the second step–the conversation between Bellard and

6

Nos. 10-31266 & 11-30306

LeDuff–non-hearsay because it is not offered to show the fact of the matter asserted.

Bellard is correct on his first assertion. The first prong, the purported statement from the Sheriff to LeDuff, would normally be considered hearsay, but is admissible non-hearsay under Rule 801(d)(2)(D) as an admission by a party-opponent. If LeDuff were to testify, this statement would be admissible. However, the conversation between Bellard and LeDuff in which Bellard claims that LeDuff told him that he had already heard from the Sheriff about the incident is textbook hearsay. Bellard is attempting to use his own testimony to show that the Sheriff had talked to LeDuff about the incident, before LeDuff and Bellard talked about it. Bellard's purpose for introducing his conversation with LeDuff is to show that the Sheriff told LeDuff of Bellard's accusations prior to Bellard and Leduff's conversation. Bellard's only evidence on this point is his own recollection of his conversation with LeDuff. He is trying to admit evidence of his own recollection of what someone else said in a conversation with him. His assertion that such evidence is not hearsay is unfounded. This is hearsay and does not fit any hearsay exceptions. Although Bellard is correct that such testimony could be used to impeach LeDuff, impeachment evidence is not competent evidence for summary judgment. *United States v. Glassman*, 562 F.2d 954, 958 (5th Cir. 1977).

Bellard also argues that the district judge should not have ruled on this issue *sua sponte* without briefing before the court and should have considered the hearsay evidence because it was not objected to by the defendant. Although Bellard points out that the law in the Fifth Circuit is that "unobjected to hearsay may be considered by the trier of fact for such probative value as it may have," *Whitehead v. Food Max of Miss. Inc.*, 163 F.3d 265, 275 (5th Cir. 1998), he incorrectly characterizes this as a requirement rather than permission to consider such evidence.

7

Bellard asserts, but does not point to any cases in this circuit, that unobjected to hearsay should be included in deciding a motion for summary judgment. The standards for summary judgment which state only competent evidence can be used in deciding the motion weigh against this reading. Further, this court on review is permitted to correct the admission of unobjected to hearsay in the interest of fairness. *Peaches Entm't v. Entm't Repertoire*, 62 F.3d 690, 694 (5th Cir. 1995). It would be odd to prohibit a district court to correct the error and make a judgment as to competency of the evidence in the absence of a hearsay objection but permit this court to correct the error on appeal. Such a rule would run counter to the usual standard permitting the trial court to correct its own errors.

Because we find the evidence in question was hearsay and that the district court was permitted to find it to be hearsay despite the lack of discussion of hearsay prior to the district court's initial opinion, we reject Bellard's appeal on this point.

B. *Bellard's Federal Liberty Interest*

Bellard alleges that the Sheriff is liable in his official and individual capacities for a violation of a Fourteenth Amendment liberty interest based on the Sheriff's denial of a name-clearing hearing to Bellard. A public employee, even an at-will employee, has a constitutional right to notice and an opportunity to be heard when the employee is "discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006). This court employs a seven-element stigma-plus-infringement test to determine whether § 1983 allows a government employee a remedy for deprivation of liberty without notice or the opportunity for a name-clearing hearing. "The plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge;

(3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request." *Id.*

*Individual Capacity*:

Bellard's claims against the Sheriff in his individual capacity fail because Bellard cannot show any evidence on summary judgment regarding the fifth element, publication. Because this claim is against the Sheriff in his individual capacity he must show that the Sheriff personally publicized the defamatory statements. Bellard's only evidence in this regard is his own statement about the conversation he had with Chief LeDuff, where LeDuff purportedly said that he had already heard about the termination from the Sheriff. Because we agree with the district court that this is hearsay and not proper evidence for summary judgment, Bellard's claim against the Sheriff in his individual capacity fails.

Bellard attempts to skirt his lack of evidence by offering other conversations as publication. The only other 'publication' Bellard can point to however, are instances in which he himself publicized the information in question. Under this court's case law, there is no publication for purposes of a deprivation of a liberty interest if the plaintiff caused the stigmatizing facts to be made public. *Campos v. Guillot,* 743 F.2d 1123, 1126 (5th Cir. 1984). While other circuits have held that self-publication can meet the publication element, this court has consistently held that public disclosure must be made by the government defendant. *Hughes v. City of Garland,* 204 F.3d 223, 228 (5th Cir. 2000). Here, publication of the charges, if any, was made at the behest of Bellard when he asked his father and Chief Knaps to act on his behalf to resolve the matter. The natural consequences of such a request were that information was conveyed to them involving the incident, either directly by Bellard himself, or

when they attempted to act on Bellard's behalf in contacting the Sheriff.[1] Because there was no publication, we affirm the dismissal of suit against the Sheriff in his individual capacity.[2]

*Official Capacity:*

The district court also correctly dismissed the claims against the Sheriff in his official capacity. Claims against the Sheriff in his official capacity are treated as claims against the municipal entity he represents. Municipalities may be held liable under § 1983 for constitutional violations if: (1) there is a constitutional violation; (2) an official policy or custom; and (3) a showing that the official policy or custom was the operational force behind the constitutional violation. *See Monell v. Dep't of Soc. Ser.*, 436 U.S. 658 (1978). Besides Bellard's failure to show any kind of policy or custom which gave rise to the alleged disclosure in question, his argument also suffers from the same lack of evidence regarding publication as his individual capacity claims. Namely, he has no competent evidence showing any disclosure by the Sheriff's office prior to his own conversation with LeDuff. As such, the district court ruling on the official capacity federal liberty interest claims against the Sheriff are affirmed.

*Personnel File:*

Finally, Bellard claims that information placed in his personnel file can satisfy the publication requirements for either the individual capacity or official capacity claims. He cites to several cases which supposedly support the proposition that a) personnel files are discoverable under Louisiana's Public Records Law, and b) that they can satisfy the publication requirement. *See City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press*, 4 So.3d 807,

---

[1] Although only relevant to Bellard's official capacity claim against the Sheriff, it is clear from the record that the Sheriff's department ensured that Bellard's agents were inquiring on his behalf before giving them information about the incident.

[2] Bellard fails to properly brief his argument that the Sheriff is liable for punitive damages in his individual capacity and those claims are waived.

821 (La. App 1st Cir., 2008). He also cites to other circuits which have held that a personnel record can satisfy the publication requirements. *See Cox v. Roskelley*, 359 F.3d 1105, 1112 (9th Cir. 2004).

There are a number of problems with Bellard's argument. First, Bellard never raised this argument at the district court and it is therefore waived. Second, there is no indication that any letter of termination was ever placed in his personnel file, and if so, whether it was placed there by the Sheriff. Proof of personal placement would be needed to hold the Sheriff individually liable, although placement in his personnel record by anyone from the Sheriff's office could satisfy Bellard's official capacity claims. Bellard does not show that either occurred. Third, there is no indication that any letter has been published or that the personnel file has been turned over to anyone.

Fourth, and most importantly, it is unclear whether any letter would actually be discoverable under Louisiana's Public Record Law. Louisiana's Public Record Law is liberally construed, but even the case Bellard points to is not directly on point and does not go as far as Bellard claims. In *City of Baton Rouge*, the Louisiana court allowed for the disclosure of the result of an Internal Affairs Investigation into police officer brutality and excessive force.[3] For the police officers in question, this necessarily implicated some of the same interests that Bellard seeks to protect here, but the public interest in the Internal Affairs Investigation is of much greater interest than this case, and the records were of a different nature. There is no indication that personnel files such as the one Bellard claims would support the publication requirement would actually be turned over under Louisiana law. We note this undecided issue of state law but refrain from ruling on it here since there are other deficiencies that defeat

---

[3] *See also East Bank Consol. Special Serv. Fire Protection Dist. v. Crossen*, 892 So. 2d 666 (La. App 5th Cir. 2004) (finding that personnel files of the fire chief including his disciplinary record and reprimands were exempt).

Bellard's claim of publication via his personnel file. Because there is no evidence of publication, we affirm the district court's grant of summary judgment.

## C. *State Liberty Interest Claims*

In addition to his federal interest claims, Bellard also cites claims against the Sheriff in his official and individual capacities for violation of his liberty interest under Article 1, Section 2 of the Louisiana State Constitution.[4] The legal analysis of Bellard's claim under the Louisiana State Constitution is exactly the same as his federal claims, *Progressive Sec. Ins. Co. v. Foster*, 711 So. 2d 675, 688 (La. 1998), with the only difference being the availability of vicarious liability in the official capacity claims. *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So. 2d 669 (La. 1981).

## *State Law–Individual Capacity*

Much like Bellard's federal claims against the Sheriff in his individual capacity, his state law claims fail because he has no competent evidence which satisfies the publication requirement. Since we agree with the district court that Bellard's statements about his conversation with LeDuff, including the reported statements by the Sheriff, are hearsay, we affirm the district court's ruling.

## *State Law–Official Capacity*

Under Louisiana law, an official can be found liable in his official capacity for the actions of his employees. *Jenkins*, 402 So. 2d at 669. The district court initially refused to dismiss this claim. After the deposition of LeDuff, the court found that there was no issue of material fact and granted the Sheriff's motion for summary judgment. We affirm this rulling.

LeDuff's original affidavit, which the district court cited in its original refusal to dismiss, indicated that he had talked with an unnamed official in the Sheriff's department about Bellard. After the motion to alter the original ruling,

---

[4] "§2. **Due Process of Law:** Section 2. No person shall be deprived of life, liberty, or property, except by due process of law."

and the order to take a deposition of LeDuff, it was revealed that this discussion with an official in the Sheriff's department occured *after* LeDuff's conversation with Bellard. During LeDuff's conversation with Bellard, he told Bellard he would have to contact the Sheriff's office to find out more information. Therefore, the conversation was undertaken by LeDuff on Bellard's behalf. The district court's analysis was correct since even if LeDuff misled Bellard for the purpose of fishing for more information, Bellard called with the intention of telling him about the incident in order to gain support from LeDuff for pleading his case to the Sheriff or helping him find new employment. Because of this, Bellard cannot claim that when acting on his behalf and with information he had already imparted to LeDuff, that the Sheriff's office published the information in question to LeDuff in violation of the state constitution. The judgment of the district court on this issue is affirmed.

## D. *State Defamation Claims*

Bellard brought state law defamation claims against the Sheriff in his individual and official capacities. Under Louisiana law a plaintiff must show four elements to prove defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004).

## *Individual Capacity*

The district court dismissed Bellard's individual capacity defamation claims in its original ruling. The court found that the statements in question were defamatory *per se*, but that the plaintiff could not make out the other elements of the claim. We agree.

Bellard's claim for defamation against the Sheriff in his individual capacity still lacks any competent evidence showing that his termination was published to a third party in an unprivileged manner and thus fails for similar

reasons as his due process claims. The communications between those working on his behalf, Knaps and Dennis Bellard, and the Sheriff, fall within either the privileged communications exception or fail the publication requirement because they were self-induced. *See Jenkins*, 402 So.2d at 669. With regard to the communication between the Sheriff and LeDuff, the only evidence Bellard presents is inadmissable hearsay.

*Official Capacity*

The district court originally allowed the official capacity defamation claims against the Sheriff to continue but eventually granted the motion for summary judgment after the deposition of LeDuff. In his official capacity, the Sheriff may be vicariously liable for the actions of his subordinates under Louisiana law. There are no Louisiana cases which deal with self-publication of defamatory statements, but as the district court noted, "given the necessity of proving fault at the level of negligence or greater under Louisiana Law, allowing proof of self-publication for these purposes would not comport with the elements of such tort." *Bellard v. Gautreaux*, 2011 WL 1103320, at *4 (M.D. La. 2011).

Bellard points to the case of *Fourcade v. City of Gretna* to support his argument that his claims should survive the motion for summary judgment. 598 So.2d 415 (La. Ct. App. 1992). There are some similarities between Bellard's allegations and *Fourcade*. In *Fourcade*, a police cadet was terminated from the police academy after allegations of steroid use were made to his superiors. The truth of the allegations was never proven and the cadet was not given a chance to clear his name. Unfortunately for Bellard's argument, that is where the similarities end. Unlike the instant case, the supervisors in *Fourcade* did tell others, including the cadet's friends, about the reasons for his dismissal. That publication was much different from the allegations here, where any publication to Knaps, Dennis Bellard, or LeDuff were made on Bellard's behalf and after they had already been apprised of the termination by Bellard himself. In

Nos. 10-31266 & 11-30306

*Fourcade,* the cadet in question had told others about his termination and the court found that such self-publication did not negate his supervisor's publication of the defamatory statements. Bellard attempts to equate this with his situation but fails to point out a key difference. The cadet's disclosures in *Fourcade* were to people other than those who found out through his supervisors. Here, the disclosures by the Sheriff's office were to the same people Bellard had already informed.  In *Fourcade*, the self-publication did not conflict with the defamation, but in the current case, there would not have been any potentially defamatory conversations without the initial self-publication by Bellard to the very same people who later received the supposedly defamatory information.

Finally, any information relayed to LeDuff by the Sheriff's office personnel is protected under Louisiana law which protects information provided by a former employer to a prospective employer.[5] Therefore, Bellard cannot show any unprivileged publication to support his state law defamation claims and we affirm the district court's grant of summary judgment for the Sheriff.

## CONCLUSION

Because Bellard has failed to present competent summary judgment evidence, we AFFIRM the district court's grant of summary judgment in favor of Sheriff Gautreaux.

---

[5] La. R.S. 23:291(A): "Any employer that, upon request by a prospective employer or a current or former employee, provides accurate information about a current or former employee's job performance or reasons for separation shall be immune from civil liability and other consequences of such disclosure provided such employer is not acting in bad faith. An employer shall be considered to be acting in bad faith only if it can be shown by a preponderance of the evidence that the information disclosed was knowingly false and deliberately misleading."

Nos. 10-31266 & 11-30306

DENNIS, Circuit Judge, concurring in the judgment:

I agree with the majority that the district court was correct to grant summary judgment for East Baton Rouge Parish Sheriff Sid Gautreaux III. However, I do not agree with all of the majority's reasoning and therefore join in the judgment only. As far as Shane Bellard's federal and state constitutional due process claims, the summary judgment evidence fails to include admissible evidence to show that the Sheriff or anyone in his Department published the sexual harassment allegations against Bellard that led to his termination from the Sheriff's Department. Bellard's affidavit that Chief Jeff LeDuff told him that the Sheriff had purportedly told LeDuff that Bellard was terminated for sexual harassment was inadmissible hearsay. *See* Fed. R. Evid. 801, 805. Thus, it was not competent summary judgment evidence. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit . . . used to support or oppose a motion must [*inter alia*] . . . set out facts that would be admissible in evidence . . . ."). Neither was the fact that Bellard himself told LeDuff about those allegations evidence of publication, *see Hughes v. City of Garland*, 204 F.3d 223, 228 (5th Cir. 2000) ("This Circuit has consistently required that public disclosure be made by the [defendant governmental entity]."); nor did Bellard introduce evidence that anyone in the Sheriff's Department "plac[ed] [such allegations] in a publically available file," *Tebo v. Tebo*, 550 F.3d 492, 504 (5th Cir. 2008); *see also Hughes*, 204 F.3d at 228. With regard to Bellard's state law defamation claims, the Sheriff was also entitled to summary judgment because Bellard failed to show a genuine issue of material fact as to why the Sheriff and his Department would not be immune from liability (if they were in fact liable) under Louisiana Revised Statutes § 23:291(A). Therefore, I concur in the majority's judgment affirming the district court's grant of summary judgment for the Sheriff on all of Bellard's claims.