# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 8, 2021

Lyle W. Cayce
Clerk

No. 20-10103

WAYNE M. KLOCKE, INDEPENDENT ADMINISTRATOR OF THE
ESTATE OF THOMAS KLOCKE,

*Plaintiff—Appellant*,

*versus*

NICHOLAS MATTHEW WATSON,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:17-CV-285

Before DAVIS, STEWART, and OLDHAM, *Circuit Judges*.

W. EUGENE DAVIS, *Circuit Judge*:*

In this case involving a defamation claim under Texas law, Plaintiff,
Wayne M. Klocke ("Klocke"), Independent Administrator of the Estate of
his son, Thomas Klocke ("Thomas"), asserts that Defendant, Nicholas
Matthew Watson ("Watson"), falsely reported that certain written and

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-10103

verbal exchanges occurred between Thomas and him during a class at the University of Texas at Arlington ("UTA"), where Watson and Thomas were both students. Klocke asserts that Thomas never made the defamatory statements published by Watson and that the statements actually exchanged between the two students were very different from those described by Watson. As explained below, however, the only admissible evidence regarding the communications between Watson and Thomas is Watson's account of what occurred. Because there is no other admissible evidence regarding the statements exchanged between the two students, Watson was able to demonstrate that there is no genuine issue of material fact as to his affirmative defense of truth. Therefore, the district court did not err in granting summary judgment. We AFFIRM.[1]

## I. FACTUAL BACKGROUND

On May 19, 2016, Watson and Thomas were sitting next to each other in a class taught by Professor Dwight Long at UTA. In sworn testimony by affidavit and deposition, Watson gave the following account of what occurred between the two students, who previously had no interactions and did not know each other. While participating in a classroom discussion led by Long, he (Watson) made a comment regarding privilege in today's society. Thereafter, Thomas opened his laptop and typed on his computer, "Gays should die." Thomas then turned his computer towards Watson and pointed to the computer screen so that Watson would view it. After Watson saw what Thomas had typed, Watson typed on his computer, "I'm gay," so that Thomas could see it and gave Thomas a confused look, trying to understand

---

[1] "An appellate court may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 300 n.1 (5th Cir. 2020) (internal quotation marks and citations omitted).

why Thomas would type such a statement. Thomas then pretended to yawn and told Watson, "Well then you're a faggot." Watson responded, "I think you should leave." Thomas then stated, "You should consider killing yourself."

Watson testified that Thomas's statements made him feel very scared and uncomfortable. While the class was ongoing, Watson emailed Long, describing what had just occurred between Thomas and him. Watson also posted an update on his Facebook account describing the incident. At some point shortly after the exchange between the two students, Thomas left the classroom and then returned, sitting on the other side of the classroom away from Watson.

At the conclusion of the class, Watson approached Long and waited until other students had finished asking Long questions after class. Watson informed Long that he had emailed Long during class about what occurred between Thomas and him. Long stated that he did not have a chance to look at his emails during class, but that he would look at the email. Watson then told Long what happened with Thomas, and Long suggested that Watson go to support services in order to report the incident. Watson then went to see Heather Snow, the Dean of Students at UTA. Snow requested that Watson send her an email describing the incident with Thomas, and Watson did so. Snow told Watson that she would forward the email to another person with UTA who would then reach out to him.

Watson was subsequently contacted by Daniel Moore, Associate Director of Academic Integrity at UTA, whom Snow assigned to investigate the incident. In sworn testimony, Moore stated that after reviewing Watson's email to Snow, he sent letters to both Thomas and Watson telling them to have no contact with each other. Thomas was also restricted from entering the building where Long's class was held.

Moore further testified as follows: On May 20, 2016, the day after the incident, he telephoned Thomas regarding Watson's allegations. During the call, Thomas "did not dispute the allegations" and "was very stoic and unemotional." Moore thereafter met with Watson and Thomas. In Moore's interview with Watson, Watson described the incident with Thomas consistent with the description in his email to Snow. Watson additionally told Moore that after Thomas left the classroom and sat in a different chair, Watson passed a note to the student who was sitting next to Thomas's empty seat (Blake Lankford), describing what had just happened between Thomas and him. During his interview with Watson, Moore "observed that Watson seemed genuinely scared and worried," perceived that Watson "was emotionally upset and fearful of Thomas," and "found [Watson] to be credible."

Moore testified that he also interviewed Long. Long's description of what Watson reported to Long "matched what Watson had told [Moore]." Long stated that he did not witness any altercation between Thomas and Watson during his class.

When Moore interviewed Thomas, Klocke accompanied him. Although Klocke indicated that he was a lawyer, he stated that he was not there to represent Thomas and "just wanted to talk to [Moore] for a few minutes." Klocke stated that "he did not know what this was about," but that he wanted Thomas back in class given that the class was during a short semester.

After Klocke left, Moore spoke with Thomas. Thomas confirmed that he and Watson were sitting next to each other during Long's class, but he gave a different description of what occurred between the two students. Thomas contended that it was not he who began communicating with Watson, but that it was Watson who initiated conversation with Thomas.

No. 20-10103

Specifically, Thomas said that Watson told him he was "beautiful" and kept glancing at him. Thomas, typing on his computer that he was "straight," requested Watson to "stop." Although Watson complied with Thomas's request to stop, Watson kept laughing at something on his phone and causing a distraction, so Thomas got up and changed seats.

Moore testified that, during his meeting with Thomas, "[Thomas] had a sheet of paper with him that he kept referring to," which "appeared to be a script or outline." Moore further observed that Thomas's responses to his follow-up questions lacked substance. For example, although Thomas stated that "he was scared of his accuser," he was not able to explain why. Additionally, there were often long pauses before Thomas would say anything in response to Moore's questions. Thomas further "lacked any emotion, even when he said he was scared of his accuser." Based on these observations, Moore found Thomas's description of the incident with Watson "suspect."

Moore lastly interviewed Lankford, who was seated on the other side of Thomas from Watson at the time of the incident. Lankford stated that "he heard Watson tell [Thomas] that he should leave" and that when "he looked over . . . both students looked really tense." Lankford also stated that Thomas left the classroom, then came back about ten minutes later, and sat on the other side of the room. Lankford also saw Watson approach Long after class and that "[Thomas] was looking at Watson when this happened." Lankford further told Moore that after Thomas left, he leaned over and asked Watson what had happened. Watson then slid over a note of what Thomas had said to him. Lankford stated that the note described the incident consistent with Watson's description of what occurred. Lankford further stated that he did not hear or see Watson laughing or causing a distraction during class.

No. 20-10103

Based on his investigation, Moore concluded that Thomas violated the student code of conduct and should be placed on probation at UTA. On May 25, 2019, Moore informed Thomas of the results of his investigation and that he was entitled to submit an appeal by June 8, 2016. Tragically, on June 2, 2016, Thomas died by suicide.

## II. PROCEDURAL HISTORY

On April 4, 2017, Klocke filed a complaint against UTA and Watson. He alleged that UTA violated Title IX by discriminating against Thomas on the basis of his gender and his status as an accused male aggressor. As to Watson, Klocke alleged that Watson made unwelcome sexual advances to Thomas and then defamed Thomas by publishing false and defamatory statements about him.

UTA filed a Rule 12(b) motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. Watson also filed a motion to dismiss, asserting that Klocke's defamation claim should be dismissed pursuant to the Texas Citizens Participation Act ("TCPA").[2] Although Klocke argued that the TCPA was inapplicable in federal court, the district court disagreed and determined that Klocke failed to meet the TCPA's requirements. The court therefore granted Watson's motion to dismiss, denied Klocke's motion to reconsider that ruling, and then entered a final

---

[2] TEX. CIV. PRAC. & REM. CODE § 27.003. As this Court has noted, "[t]he Texas Citizens Participation Act is an anti-SLAPP (Strategic Litigation Against Public Participation) statute designed to "'encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law.'" *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (quoting TEX. CIV. PRAC. & REM. CODE § 27.003). "Other states have passed similar anti-SLAPP statutes because they 'have expressed concerns over the use (or abuse) of lawsuits that have the purpose or effect of chilling the exercise of First Amendment rights.'" *Id.* (citation omitted).

No. 20-10103

judgment as to Watson only, as allowed by Rule 54(b). Klocke timely appealed.

As to UTA's motion to dismiss, the district court denied the motion and suggested that a motion for summary judgment would be a more appropriate request for summary disposition. UTA subsequently moved for summary judgment again seeking dismissal of Klocke's Title IX claims, and Klocke filed a cross motion for partial summary judgment as to UTA's liability under Title IX. The district court granted UTA's motion for summary judgment and denied Klocke's cross motion for partial summary judgment. Klocke timely appealed.

This Court affirmed the district court's summary judgment in favor of UTA, but reversed and remanded the district court's judgment dismissing Klocke's claims against Watson.[3] After remand, Klocke filed an amended complaint restating his claim for defamation against Watson. Specifically, Klocke alleged that Watson falsely published on Facebook and to UTA, through Snow and Moore, that Thomas wrote on his computer "all gays should die" or "gays should die," that Watson falsely published that Thomas told him he "should kill himself" or "should consider killing himself," and that Watson falsely published that Thomas called him a "faggot." Klocke further alleged that Watson falsely published that other students heard Thomas call Watson a faggot and that Thomas was "an aggressor." Klocke further alleged that Watson omitted material facts from his publications to create the false impression that Thomas threatened him and that the threat was unabated. Finally, Klocke alleged that Watson falsely published fact statements (1) that damaged Thomas's occupation as a student and any

---

[3] *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204 (5th Cir. 2019); *Klocke*, 936 F.3d at 245-46 (holding that the TCPA was inapplicable in federal diversity cases because the statute conflicts with Rules 12 and 56 of the Federal Rules of Civil Procedure).

future occupation, (2) that Thomas made threats against Watson, and (3) that accused Thomas of sexual misconduct.

Watson subsequently moved for summary judgment seeking dismissal of Klocke's amended complaint based on numerous grounds. The district court granted the motion, entering summary judgment in favor of Watson and dismissing Klocke's defamation claim. Klocke timely appealed.

### III. DISCUSSION

On appeal, Klocke argues that, contrary to the district court's conclusion, "[g]enuine issues of material fact existed as to whether Watson defamed Thomas, under one or more of the pled theories of defamation." Klocke argues that the district court ignored and credited no weight to certain evidence that showed "there was at least a fact issue concerning the falsity of Watson's publication that he had been threatened, and whether the publications were defamatory." He further asserts that the district court ignored that Thomas denied making the statements alleged by Watson and that Thomas reported a "very different account of what transpired between the two students."

### A.  Standard of Review

This Court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court.[4] Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[5] "The [district] court shall grant summary judgment if the

---

[4] *Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 382 (5th Cir. 2019); *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[5] FED. R. CIV. P. 56(a).

No. 20-10103

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by" (1) citing to particular parts of materials in the record, (2) demonstrating that the materials cited do not establish the absence or presence of a genuine dispute, or, and especially relevant to this case, (3) showing "that an adverse party cannot produce admissible evidence to support the fact."[7]

### B. Defamation under Texas Law

As articulated by the Texas Supreme Court, "[t]o state a defamation claim, a plaintiff must show (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, at least amounting to negligence, and (4) damages, in some cases."[8] A statement is "defamatory" when it tends to "harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."[9] "In defamation suits brought by private individuals, truth is an affirmative defense."[10]

---

[6] *Id.*

[7] FED. R. CIV. P. 56(c)(1).

[8] *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) (citation omitted).

[9] *Id.* (internal quotation marks and citations omitted).

[10] *Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019) (citation omitted); *see* TEX. CIV. PRAC. & REM. CODE § 73.005(a) ("The truth of the statement in the publication on which an action for libel is based is a defense to the action.").

No. 20-10103

## C. Analysis

Watson moved for summary judgment based on the affirmative defense of truth.[11] Specifically, Watson contended that his sworn testimony by way of declaration and deposition established that Thomas typed on his computer that "gays should die," that Thomas told Watson he was a "faggot," and that Thomas told Watson he "should consider killing himself." Klocke asserts that Watson's testimony recounting Thomas's statements is inadmissible hearsay under Federal Rule of Evidence 801. As Watson argues, however, Watson's testimony regarding Thomas's statements is not hearsay but rather comprises statements by "an opposing party" under Rule 801(d)(2)(A). When a "statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity," the statement is not hearsay.[12] In this case, Watson is offering the statements he contends Thomas made to him against Klocke, the administrator of Thomas's estate.[13] Watson's testimony regarding what Thomas said to him, therefore, is not hearsay and is admissible as an opposing party's statement under Rule 801(d)(2)(A).

---

[11] Klocke contends that the falsity of Watson's alleged defamatory statements is presumed and that Watson's motion for summary judgment wrongly flips the burden of proof onto him. Klocke's argument is unavailing. The authority upon which Klocke relies recognizes that truth is an affirmative defense, and Watson's motion for summary judgment was based on this defense. *See Thomas-Smith v. Mackin*, 238 S.W.3d 503, 509 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (noting that "truth of the statement is an affirmative defense that must be proved by the defendant"). Watson produced competent summary judgment evidence in support of his defense. The burden then shifted to Klocke to come forward with admissible evidence creating a genuine issue of material fact for trial regarding that defense. Because, as explained herein, Klocke is unable to do so, summary judgment was appropriate.

[12] FED. R. EVID. 801(d)(2)(A).

[13] Admissions by a decedent fall under Rule 801(d)(2)(A) when the estate is a party to the lawsuit. *See Estate of Shafer v. C.I.R.*, 749 F.2d 1216, 1220 (6th Cir. 1984).

No. 20-10103

Klocke argues that Watson's testimony nonetheless is inadmissible under Texas law's "Dead Man's Rule," as set forth in Rule 601 of the Texas Rules of Evidence governing witness competency. Klocke is correct that Texas Rule of Evidence 601 applies in this case under Federal Rule of Evidence 601, which provides that "state law governs the witness's competency [to testify] regarding a claim or defense for which state law supplies the rule of decision." Because this matter involves a state law defamation claim and defense, Texas Rule of Evidence 601 governs witness competency. Under subsection (b), entitled "Dead Man's Rule," "a party may not testify against another party about an oral statement by the testator, intestate, or ward" in a civil case "by or against a party in the party's capacity as an executor, administrator, or guardian."[14]

Importantly, Texas Rule 601 contains two exceptions. The rule allows a party to testify against another party about an oral statement by the decedent if (1) the party's testimony about the statement is corroborated; or (2) the opposing party calls the party to testify at trial about the statement.[15] Klocke argues that neither exception is applicable here because Watson's testimony recounting Thomas's statements is not corroborated, and Klocke will not call Watson to testify at trial. As Watson argues, however, Klocke's arguments have no merit. First, Watson's testimony regarding Thomas's oral statements is corroborated by Watson's contemporaneous Facebook post, contemporaneous email to Long, the note he showed to Lankford immediately after Klocke left the classroom and changed seats, and his email to Snow shortly after the conclusion of Long's class.

---

[14] Tex. R. Evid. Rule 601(b).

[15] Tex. R. Evid. Rule 601(b)(3).

No. 20-10103

Additionally, although Klocke attempts to avoid application of the second exception to the rule, Texas jurisprudence provides that Klocke actually waived application of the Dead Man's Rule during the deposition of Watson and in opposing Watson's motion for summary judgment. Specifically, under Texas jurisprudence, when a party does not make an objection under Rule 601(b) during a deposition to testimony regarding oral statements of the decedent and then attaches the deposition testimony as summary judgment proof, the party waives application of the Dead Man's Rule as to those statements.[16] In this case, when Klocke deposed Watson, counsel for Klocke specifically asked Watson, "[W]hat did Thomas say?" In opposing Watson's motion for summary judgment, Klocke attached a copy of Watson's deposition testimony reflecting Watson's description of Thomas's statements. Therefore, under Texas law, Klocke has waived application of the Dead Man's Rule with respect to the statements Watson contends Thomas made to him.

Klocke contends that "there was abundant evidence creating a genuine issue of fact concerning the falsity of some or all of Watson's publications." He points out that during Moore's interview of Thomas, Thomas denied that he made the statements Watson described and that Thomas gave a very different account of what occurred between the two students. Klocke contends that Moore's notes from his interview with Thomas constitute admissible hearsay under various exceptions to the hearsay rule. As described below, however, Klocke is mistaken that any hearsay exception applies.

Klocke argues that Moore's notes from his interview with Thomas are admissible under Rule 803(1) as a "present sense impression," defined as

---

[16] *Fraga v. Drake*, 276 S.W.3d 55, 61 (Tex. App.—El Paso 2008).

"[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." As this Court has noted, "The justification for this hearsay exception relies on the contemporaneousness of the event under consideration and the statement describing the event."[17] "Because the two occur almost simultaneously, there is almost no 'likelihood of [a] deliberate or conscious misrepresentation.'"[18]

The "event under consideration" for purposes of Rule 803(1) is the incident that occurred between Watson and Thomas on May 19, 2016. Moore's interview notes do not fall within the requirements of Rule 803(1) because Moore did not interview Thomas "while or immediately after" Thomas perceived the incident. Moore interviewed Thomas four days later, on May 23, 2016. Consequently, Moore's interview notes of Thomas's description of the incident are not admissible under the "present sense impression" hearsay exception.[19]

---

[17] *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991).

[18] *Id.* (citations omitted).

[19] Klocke emphasizes that in his interview with Moore, Thomas denied making the statements described by Watson and that the district court wrongly ignored the evidence of Thomas's denial as reflected in Moore's interview notes. Even if the "event under consideration" for purposes of Rule 803(1) is not the incident between Thomas and Watson, but instead Moore's interview of Thomas, and Moore's notes were made "while or immediately after" his interview with Thomas, then it is arguable that Thomas's denial of making the statements would be admissible as Moore's present sense impression of his interview with Thomas. Assuming without deciding that Moore's notes of Thomas's denial would be admissible, such evidence by itself, without Thomas's description of the communications between him and Watson which is inadmissible, would be a "mere scintilla" of evidence and insufficient to create a genuine issue of material fact as to Watson's affirmative defense of truth. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

No. 20-10103

Klocke also argues that Moore's notes from his interview with Thomas are admissible under Rule 803(6) as a "record of a regularly conducted activity," also known as the business records exception to the hearsay rule. "The business records exception to the hearsay rule applies only if the person who makes the statement 'is himself acting in the regular course of business.'"[20] "The justification for the business records exception rests on the assumption that business records are reliable because they are created on a day-to-day basis and '[t]he very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision."[21] While Moore's interview notes were made in the regular course of his business as a UTA investigator/disciplinarian, Thomas clearly was not acting in the course of a regularly conducted business activity during his interview with Moore. Therefore, Moore's notes of Thomas's description of the communications between Watson and him do not fall within the business records exception to the hearsay rule.

The residual exception to the hearsay rule, Rule 807, is the final hearsay exception upon which Klocke relies. Rule 807 provides that a hearsay statement may not be excluded, even though it is not admissible under any of the hearsay exceptions in Rules 803 or 804, if (1) "the statement is supported by sufficient guarantee of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement," and (2) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through

---

[20] *Id.* at 279 (citation omitted).

[21] *Id.* (internal quotation marks and citation omitted).

No. 20-10103

reasonable efforts."[22] This Court has "held that the [residual] exception must be used sparingly."[23]

Klocke does not describe how Thomas's statements during his interview with Moore were "supported by sufficient guarantee of trustworthiness" to meet the first factor under Rule 807. Considering the totality of the circumstances, we conclude that Thomas's statements during his interview with Moore describing the incident between Watson and him were not supported by sufficient guarantee of trustworthiness. Specifically, the interview occurred four days after the incident, the statements were self-serving, and the statements lacked corroborating evidence. In light of these circumstances, and that the residual exception should be used sparingly, Moore's notes of Thomas's statements describing the incident between him and Watson are not admissible under the residual exception.

Klocke additionally asserts that the district court ignored the testimony of Lankford, the student sitting on the other side of Thomas from Watson, who testified that he did not observe Thomas acting as an aggressor and that he did not observe any reaction by Watson indicating that Watson had been threatened. Lankford's testimony, however, is not material to Watson's affirmative defense of truth which involves what the parties said, not how the parties appeared. Moreover, the one statement Lankford testified he did hear does not create a genuine issue regarding Watson's affirmative defense because Lankford's account of the statement is not inconsistent with Watson's account.

---

[22] FED. R. EVID. 807(a).

[23] *Rock*, 922 F.2d at 282.

In sum, there is no admissible evidence that Thomas said anything other than what Watson contends Thomas said. Consequently, there is no genuine issue of material fact as to Watson's affirmative defense of truth.

The dubitante opinion complains that we are invading the province of the district court in determining that Klocke has come forward with no competent summary judgment evidence establishing a genuine issue for trial. As we state above, however, we review summary judgments de novo applying the standards set forth in Rule 56, and we have the discretion to affirm summary judgment on any ground supported by the record, even if that basis is different from that relied on by the district court. Although the district court did not expressly grant summary judgment based on Klocke's lack of competent summary-judgment evidence, we have the discretion to resolve the evidentiary issues presented herein and argued by the parties below to affirm. This case is before us for the third time, and we believe another remand would prolong this matter unnecessarily. Therefore, exercising our discretion in this matter to resolve the evidentiary issues presented is entirely appropriate and warranted here.

The dubitante opinion also complains that we have deleted portions of the evidence favorable to Klocke and have consequently failed to decide this case in the light most favorable to the non-movant. What Judge Oldham overlooks is that we are declining to consider evidence that is inadmissible and that we have considered only the admissible summary-judgment evidence in this case, which Rule 56 requires us to do.

## IV.  CONCLUSION

Based on the foregoing, the district court's summary judgment in favor of Defendant, Nicholas Matthew Watson, is AFFIRMED.

No. 20-10103

ANDREW S. OLDHAM, *Circuit Judge*, dubitante:

This is a tragic case. One college student, Thomas Klocke, allegedly made hurtful statements during class to another college student, Nicholas Watson. The University of Texas at Arlington investigated the incident. UTA's student-conduct investigator, Daniel Moore, found Watson's account of the incident more credible—but Moore emphasized that "'I do not have anything to corroborate it.'" *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019) (quoting an email sent by Moore). The entire case boiled down to he-said-he-said. UTA severely disciplined Klocke anyway. Klocke was so devastated that he purchased a gun and killed himself.

Klocke's estate sued Watson for defamation. Watson moved for summary judgment on his affirmative defense of truth. Because Watson is both the movant and the party that bears the burden of proof to show truth at trial, he shoulders a doubly heavy burden here. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That's burden one. And "if the movant bears the burden of proof on an issue, . . . because . . . as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). That's burden two.

So did Watson carry his double burden? It's hard to say. There's plenty in the record to create a material dispute of fact about who said what during that fateful class conversation. During his interview with Moore, Klocke denied the truth of Watson's allegations and provided a radically different account of who said what. Moore recorded as much in notes taken

17

during the interview. As you'd expect, the two parties dispute whether those notes are admissible. But the district court never resolved that dispute. Instead, it simply asserted that "[t]he record . . . is entirely to the contrary" of Klocke's factual contentions.

That's demonstrably false, as our panel unanimously agrees. And where, as here, a district court simply excludes an entire category of evidence without any explanation, we ordinarily vacate the decision and send it back. *See, e.g.*, *Certain Underwriters at Lloyd's v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 269 (5th Cir. 2020). What's odd, however, is that the majority is not content with the ordinary course. The majority instead ventures off to decide the case on a ground that the district court did not reach—namely, the hearsay rules. I have four concerns with that approach.

First, "we are a court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005). I can imagine no good reason, and the majority offers none, for deciding a previously unresolved evidentiary question. The district court is ideally situated to make evidentiary determinations in the first instance, after a hearing if necessary. We are not. The majority nonetheless steps into the district court's shoes, holds its own evidentiary hearing (unfortunately without a hearing), and then finds the facts in the first instance by ignoring one side of the he-said-he-said dispute—all without any guidance from the district court.

Second, by wholesale excluding Klocke's evidence as hearsay, the majority pretermits the iterative process of objection and limitation typical of evidentiary disputes. It is axiomatic that "[a]n item of evidence may be logically relevant in several aspects." 1 MᴄCᴏʀᴍɪᴄᴋ ᴏɴ Evɪᴅᴇɴᴄᴇ § 59 (8th ed. 2020). "For one of these purposes it may be admissible but for another inadmissible." *Ibid.* Had the district court engaged the parties' evidentiary arguments, it might well have concluded that Moore's notes are

admissible when offered to prove something about Moore's state of mind (e.g., his perception that the two students' stories differ), as opposed to the truth of the matter contained therein. *Cf. Chevron Oronite Co. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 228 (5th Cir. 2020) (explaining that the admissibility of an out of court statement turns on the purpose for which it is offered). The majority forgoes that refining process in favor of blunderbuss exclusion.

Third, and more broadly, we are obligated to construe the summary-judgment record in the light most favorable to the non-movant, here Klocke. As we've explained elsewhere: "[T]he party who defended against the motion for summary judgment will have the advantage of the court's reading the record in the light most favorable to him, will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant." *Anderson v. Winter*, 631 F.3d 1238, 1240 (5th Cir. 1980). Here, the majority does the opposite—it deletes the portions of the record that favor Klocke and declares the case over.

My fourth and final concern arises from the majority's decision to admit all of Watson's evidence notwithstanding Texas's "Dead Man's Rule," Tex. R. Evid. 601(b). That Rule generally prohibits Watson from testifying about "an oral statement by the decedent," here Klocke. *Id.* 601(b)(2). But the majority says that Klocke's estate waived that Rule by deposing Watson before trial. *See ante*, at 12. I am not so sure. The text of the Rule says the estate can waive it by calling Watson "to testify *at the trial*." *Id.* 601(b)(3)(B) (emphasis added). That "at the trial" limitation "marks a change from the approach followed under [preexisting law]," in which "waiver occurred when a party inquired about [the decedent's statements] during a deposition of an adverse party." 1 Tex. Prac., Texas Rules Of Evidence § 601.4 (4th ed. 2021). The majority never acknowledges this change, nor does its primary authority. *See ante*, at 12 n.16 (citing *Fraga*

*v. Drake*, 276 S.W.3d 55, 61 (Tex. App.—El Paso 2008)). The majority simply makes an *Erie* guess against the text of the Rule, without any guidance from the state supreme court, and (again) without any decision from the district court.

I am not sure who said what or who can prove what. But I am doubtful that these shortcuts are the best way to serve the law or these parties.