# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 28, 2026

Lyle W. Cayce
Clerk

———————

No. 24-11011

———————

Sophia Lewis, *Individually and as Representative of* the Estate of Shamond Lewis, *Deceased*,

*Plaintiff—Appellant*,

*versus*

Annette Grant, *Officer*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-381

———————————————————————

Before Higginbotham, Ho, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Plaintiff Sophia Lewis brought this excessive force case on behalf of her son, Shamond Lewis, after he died in pretrial detention at the Dallas County Jail. The only defendant remaining on appeal is Officer Annette Grant. Whether, where, and how Grant applied her body weight to Lewis is contested. Grant moved for summary judgment, asserting qualified

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

immunity. Despite viewing all facts in the light most favorable to Plaintiff, the district court ruled for Grant. The court found that any violation of Lewis's Fourteenth Amendment rights was not clearly established at the time. We agree.

## I.

On September 22, 2022, Shamond Lewis was arrested for aggravated assault and booked into the Dallas County Jail as a pretrial detainee. During the booking process, jail personnel noted that Lewis had been diagnosed with paranoid schizophrenia. He was initially placed in an intake single cell holding unit to be monitored on suicide precaution.

At approximately 12:45 a.m., Lewis was escorted to a changeout room to change into jail attire. According to the officers, Lewis refused to change out of his clothes. When an officer attempted to restrain Lewis, he "pulled away from [him] and curled into a ball." The officer gave Lewis several commands to "give [them] his hands and quit resisting." The officer was unable to place both handcuffs on Lewis. He then placed an officer assist call.

Multiple officers responded to the call, including Officer Grant. Grant arrived at the scene and observed Lewis on the floor in a face-down position with his left arm under his body, resisting the officers' efforts to handcuff him. What Grant did next is disputed by the parties.

Another officer present in the changeout room stated in an interview that Grant stood on top of Lewis's legs and moved up from the legs to "above [Lewis's] buttock area." Grant presented varied testimony in the multiple times she was interviewed. She first stated that she sat on Lewis's legs. Later, she said she had hovered over Lewis in a squatting position while she held his arms.

After approximately two and a half minutes, Lewis was brought under control and handcuffed. Grant then left the changeout room. The remaining officers changed Lewis's clothes and placed him in a six-point restraint chair.

Ten minutes later, as jail officials were providing water to Lewis, his eyes rolled back, he became unresponsive, and he had difficulty breathing.

Lewis was taken to the nurse's station where officers realized that he was not breathing and needed emergency care. Nursing staff initiated CPR. Lewis suddenly took a large gasp of air. He was then transferred out to the Parkland Emergency Department by EMS and later admitted to Parkland Hospital.

Lewis died six days later. His medical records from Parkland note that he "likely suffered severe anoxic brain injury," and that "[m]ulti-system organ failure seems to be a result of shock state which is common following an arrest." The medical examiner conducting the autopsy concluded that the cause and manner of death "remains undetermined."

Plaintiff Sophia Lewis, on behalf of her son, sued Grant alongside other defendants under 42 U.S.C. § 1983 for using excessive force in violation of Lewis's Fourteenth Amendment rights. Plaintiff argues that Grant stood with her entire body weight on Lewis while he was on the floor, which she claims was objectively unreasonable. Grant moved for summary judgment, asserting that she was entitled to qualified immunity.

The district court held that even if Plaintiff could produce evidence showing that Grant stood with her entire body weight on Lewis and that such conduct violated Lewis's Fourteenth Amendment rights, Grant was entitled to qualified immunity. According to the district court, it was not clearly established at the time of the incident that Grant's conduct constituted excessive force under the Fourteenth Amendment. The district court granted Officer Grant's motion for summary judgment. Plaintiff appealed.

## II.

We review the district court's grant of summary judgment de novo. *See Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 461 (5th Cir. 2015). To overcome qualified immunity, the plaintiff must show both that the officer

violated a constitutional right and that the right was clearly established at the time of the violation. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). We begin with the latter question. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To determine whether a right was clearly established at the time of the violation, we ask whether the law "so clearly and unambiguously prohibited [Defendant's] conduct that every reasonable official would understand that what he is doing violates [the law]." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (cleaned up). Plaintiff must "point to controlling authority— or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 371–72 (internal quotation marks and citation omitted). This authority need not be "a case directly on point." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). But "existing precedent must have placed the . . . constitutional question beyond debate." *Id.*

Plaintiff must cite precedent holding that Grant's particular use of force violated clearly established law. Plaintiff points to four cases to that end. All four cases can be distinguished from the conduct alleged in this case.

First, Plaintiff cites *Simpson v. Hines*, 903 F.2d 400 (5th Cir. 1990). *Simpson* was also an excessive force case involving the death of a pretrial detainee. *Id.* at 401. The defendant in *Simpson* placed the decedent in a neck hold while a police officer, nicknamed "Beef" due to his large size, sat on his chest. *Id.* at 402. The decedent died as a result of asphyxia from the trauma to his neck. *Id.* Though the court denied qualified immunity in *Simpson*, the conduct in this case is distinguishable. *Id.* There is no allegation by Plaintiff that Grant sat, stood, or placed her body weight on Lewis's chest. The facts

viewed in the light most favorable to Plaintiff place Grant on Lewis's legs.[1] *See Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). There is also no allegation that any officer placed Lewis in a neck hold. Finally, there is no allegation that Lewis died from asphyxia.

Next, Plaintiff cites *Austin v. City of Pasadena*, 74 F.4th 312 (5th Cir. 2023) and *Darden v. City of Fort Worth*, 880 F.3d 722 (5th Cir. 2018). Both are excessive force cases where police deployed tasers multiple times, leading to cardiac arrest and death. *Austin*, 74 F.4th at 319–22; *Darden*, 880 F.3d at 725–27. The officers in each case used their body weight to press the decedent, similar to the facts here. *Austin*, 74 F.4th at 320; *Darden*, 880 F.3d at 728. But we focused on the repeated tasing in these cases. *Austin*, 74 F.4th at 326 ("[A] jury could find that . . . the physical restraint here—particularly tasing [the decedent] multiple times—constituted excessive force in violation of his Fourteenth Amendment rights."); *Darden*, 880 F.3d at 731. In contrast, there was no taser involved in the present case.

Finally, Plaintiff argues that when a "suspect lacks any means of evading custody—for example, by being pinned to the ground by multiple police officers—force is not justified." *Austin*, 74 F.4th at 327 (citation omitted). According to Plaintiff, Grant's use of her body weight was force that was not justified because several officers were already "on" Lewis. Plaintiff cites *Bush v. Strain*, a case where we denied qualified immunity to an officer who

---

[1] The district court relied on inadmissible hearsay when it placed Grant on Lewis's back, and we therefore decline to do so here. Lewis's summary judgment evidence must be "competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987). Although the report itself is a public record, Office Tavera-Luna's statement in the interview that Grant was "above [Lewis's] buttock area" is hearsay. Fed. R. Evid. 801–803. Furthermore, on appeal, Plaintiff waived the issue of whether the district erred in denying further discovery to take Officer Tavera-Luna's deposition by failing to raise it in any briefing. *See Davila v. United States*, 713 F.3d 248, 255 n.3 (5th Cir. 2013); Fed. R. App. P. 28(a)(5).

slammed an arrestee's face into a car after she was "handcuffed and subdued." 513 F.3d 492, 501–02 (5th Cir. 2008). Such force can be plainly distinguished from Grant's use of her body weight on Lewis.

Plaintiff has failed to show that the rights allegedly violated here were clearly established at the time of the violation. Grant is thus entitled to qualified immunity. We need not reach the question of whether Grant violated a constitutional right. *See Camreta v. Greene*, 563 U.S. 692, 707 (2011).

Affirmed.